[Cite as *State v. Whitman*, 2021-Ohio-4510.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                    Court of Appeals No.  S-21-003

      Appellee                              Trial Court No.  20 CR 817

v.

Trevin Whitman                           **DECISION AND JUDGMENT**

      Appellant                             Decided:  December 22, 2021

* * * * *

Beth Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Otero, Assistant Prosecuting Attorney, for appellee.

Catherine R. Meehan, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

**{¶ 1}** Appellant, Trevin Whitman, appeals the judgment of the Sandusky County

Court of Common Pleas, sentencing him to 85 months in prison after he pled guilty to

five counts of unlawful sexual conduct with a minor.  Finding no error in the proceedings below, we affirm.

## A.  Facts and Procedural Background

{¶ 2} On October 16, 2020, appellant was indicted on one count of rape in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, and five counts of unlawful sexual conduct with a minor in violation of R.C. 2907.04(A), felonies of the fourth degree.  These charges were based upon appellant's sexual contact with a minor, K.P. (whose date of birth is June 12, 2007) over a two-month period from June 1, 2020, through July 31, 2020.  The rape charge was premised upon sexual contact that occurred from June 1, 2020, through June 11, 2020, while K.P. was not yet 13 years old.  The remaining counts all involved sexual contact that took place after K.P.'s thirteenth birthday.

{¶ 3} On October 26, 2020, appellant appeared before the trial court for arraignment.  He entered a plea of not guilty to the charges contained in the indictment, and the matter proceeded through pretrial discovery and motion practice.  Following successful plea negotiations, on January 14, 2021, appellant came before the trial court for a change of plea hearing.

{¶ 4} During the plea hearing, the state informed the trial court of the parties' plea agreement, under which appellant agreed to plea guilty to all five counts of unlawful sexual conduct with a minor in exchange for the state's dismissal of the rape charge.

2.

Appellant's trial counsel agreed with the state's recitation of the plea agreement, and the trial court's attention then shifted to appellant. Appellant indicated his desire to plead guilty as described by the state, and a Crim.R. 11 colloquy ensued.

{¶ 5} At the beginning of the plea colloquy, the trial court reviewed the plea form with appellant. This plea form advised appellant that he was entering a guilty plea to five counts of unlawful sexual conduct with a minor, all of which were felonies of the fourth degree. The form also advised appellant that he could be sentenced "to prison for a term of 6-18 months for each count of a fourth degree felony." The form did not include notification of the potential for consecutive sentences. Similarly, the trial court orally advised appellant that it "could sentence [him] to prison for a term of 6 to 18 months for each count of a fourth degree felony," but made no mention of consecutive sentencing during the colloquy.

{¶ 6} After ensuring appellant understood the rights he was waiving by pleading guilty to five counts of unlawful sexual conduct with a minor, the trial court accepted appellant's plea, found him guilty of all five counts, and continued the matter so that a presentence investigation report could be prepared prior to sentencing.

{¶ 7} On March 25, 2021, appellant appeared for sentencing. At the outset of the hearing, appellant's trial counsel voiced a concern that the trial court judge may have previously represented the victim in this case as a guardian ad litem. The trial court responded by stating that it had "no recollection of that." Furthermore, the prosecutor for

3.

the state indicated: "The victim's mother is present in the courtroom today. I did discuss it with her, and she had absolutely no memory of that. She recognized you as being the Judge in this case and not from any prior interaction." The trial court then inquired of appellant's trial counsel as to whether she could identify a time frame in which the alleged representation might have taken place. Counsel could not provide a definitive time frame. Ultimately, the trial court found that it did not have a conflict of interest, and the matter proceeded to sentencing.

{¶ 8} Thereafter, the trial court heard statements from the state, the victim's mother, defense counsel, and appellant. The court noted its consideration of the presentence investigation report, the principles and purposes of felony sentencing under R.C. 2929.11, and the seriousness and recidivism factors under R.C. 2929.12. The court further recognized that it was entitled to impose prison sentences for appellant's sex offenses under R.C. 2929.13(B)(1)(b), because the offenses were violations of Chapter 2907 of the Revised Code and appellant held a position of oversight over the victim that obligated him to prevent the offenses from happening.

{¶ 9} Upon consideration of the foregoing, the trial court found that "this was a classic case of grooming. [Appellant] was feeding [the victim] drugs. He was there for her to talk with her and things, so he fostered that relationship as grooming, and, ultimately, resulted in imposing himself sexually upon the victim." Consequently, the trial court ordered appellant to serve 17 months in prison for each of the five counts of

4.

unlawful sexual conduct with a minor. Furthermore, the court ordered appellant to serve the 17-month sentences consecutively, for an aggregate prison term of 85 months.

{¶ 10} The court found, both verbally at the sentencing hearing and in its written sentencing entry, that consecutive sentences were necessary to protect the public from future crime or to punish appellant and were not disproportionate to the seriousness of appellant's conduct and to the danger he poses to the public. The court also found that at least two of the multiple offenses committed by appellant were committed as part of a course of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses would adequately reflect the seriousness of appellant's conduct.

{¶ 11} Following sentencing, appellant filed his timely notice of appeal.

### B. Assignments of Error

{¶ 12} On appeal, appellant assigns the following errors for our review:

Assignment of Error I: The trial court erred when it accepted appellant's guilty plea after failing to notify appellant of the maximum penalties during the Crim.R. 11 plea colloquy.

Assignment of Error II: The trial court erred in sentencing appellant to a term of incarceration.

Assignment of Error III: The trial court erred in sentencing appellant to serve consecutive sentences.

5.

Assignment of Error IV: Trial counsel was ineffective in violation of the Sixth Amendment to the United States Constitution and Ohio Constitution by failing to seek a continuance to investigate the conflict of interest between the judge and alleged victim and by failing to file an affidavit of disqualification.

## II. Analysis

### A. Crim.R. 11 Colloquy

{¶ 13} In his first assignment of error, appellant argues that his plea was not knowingly, voluntarily, and intelligently entered because the trial court failed to advise him of the maximum aggregate prison sentence that could be imposed in the event the court ordered his individual sentences to be served consecutively.

{¶ 14} A guilty plea must be made knowingly, intelligently, and voluntarily to be valid under both the United States and Ohio Constitutions. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). "To ensure that a defendant enters a plea knowingly, intelligently, and voluntarily, the trial court is required to engage a defendant in a plea colloquy pursuant to Crim.R. 11." *State v. Petronzio*, 8th Dist. Cuyahoga No. 109823, 2021-Ohio-2041, ¶ 5, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25-26.

6.

{¶ 15} Crim.R. 11(C) sets forth the information that a trial court must provide to a defendant prior to accepting a plea of guilty or no contest. Relevant to the issue at hand, the rule provides:

> (C)(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, *with understanding of the nature of the charges and of the maximum penalty involved*, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing. (Emphasis added.)

{¶ 16} When evaluating whether an appellant is entitled to have a plea vacated on appeal based upon the argument that the trial court failed to comply with Crim.R. 11 and thus the plea was not knowing, intelligent and voluntary, we consider the following questions: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses [an appellant] from the burden of demonstrating prejudice? and (3) if a showing

7.

of prejudice is required, has the [appellant] met that burden?" *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 17.

{¶ 17} Whether an appellant bears the burden of demonstrating prejudice depends upon whether the provision of the rule allegedly violated involves a constitutional right or a non-constitutional right. "If a trial court failed to explain to the appellant the constitutional rights set forth in Crim.R. 11(C)(2)(c), a reviewing court presumes the plea was entered involuntarily and unknowingly and a showing of prejudice is not required in order for the plea to be vacated." *State v. Morgan*, 6th Dist. Lucas Nos. L-20-1156, L-21-1017, L-21-1018, 2021-Ohio-3996, ¶ 16, citing *Dangler* at ¶ 14. "However, if a trial court failed to completely explain 'other "nonconstitutional" aspects of the plea colloquy, a defendant must affirmatively show prejudice to invalidate a plea.'" *Id.*, quoting *Dangler* at ¶ 14. "The test for prejudice is 'whether the plea would have otherwise been made.'" *Clark* at ¶ 32, quoting *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 18} Here, appellant argues that his plea was not knowingly entered because the trial court did not apprise him of the maximum penalty involved and thus failed to comply with Crim.R. 11(C)(2)(a). Appellant acknowledges that the trial court properly informed him of the 18-month maximum prison sentence that could be imposed on each of his five felonies of the fourth degree. Thus, there is no dispute that the trial court provided appellant with notification of the maximum penalty involved for each of his

8.

individual offenses.  Nonetheless, appellant asserts that the trial court "failed to notify [him] that the sentences could run consecutive to one another, making the maximum penalty ninety months."  In essence, appellant contends that the trial court was required to inform him of the potential for consecutive sentencing and that the failure to do so means his guilty plea was not knowing, intelligent, and voluntary.

{¶ 19} Appellant's argument is not new.  Indeed, the same argument was raised and rejected by the Ohio Supreme Court over three decades ago in *State v. Johnson*, 40 Ohio St.3d 130, 132, 532 N.E.2d 1295 (1988).  There, the court examined whether trial courts must notify defendants who plead guilty to more than one offense of the potential for consecutive sentences in order to comply with a prior version of Crim.R. 11(C)(2)(a), which required trial courts to ensure defendants had an "understanding of the nature of the *charge* and of the maximum penalty involved."  (Emphasis added.)

{¶ 20} Construing this version of the rule,[1] the court held: "Failure to inform a defendant who pleads guilty to more than one offense that the court may order him to serve any sentences imposed consecutively, rather than concurrently, is not a violation of Crim.R. 11(C)(2), and does not render the plea involuntary."  *Id.* at syllabus.  In reaching its conclusion, the court explained:

---

[1] Crim.R. 11(C)(2)(a) was amended in 1998 and the word "charge" was changed to "charges."  *See* 83 Ohio St.3d xciii, cix (effective July 1, 1998).

9.

Although there has been no violation of the appellee's constitutional rights here, we must determine whether there has been prejudicial error committed by the trial court regarding the mandates of Crim.R. 11(C). We begin our analysis by considering the text of the rule itself. A review of such rule, as set forth above, indicates that it requires the trial court to explain before it accepts "the plea," "*the* nature of *the* charge and of *the* maximum penalty involved." (Emphasis added.) Crim.R. 11(C)(2)(a). Upon its face the rule speaks in the singular. The term "the charge" indicates a single and individual criminal charge. So, too, does "the plea" refer to "a plea" which the court "shall not accept" until the dictates of the rule have been observed. Consequently, the term "the maximum penalty" which is required to be explained is also to be understood as referring to a single penalty. In the context of "the plea" to "the charge," the reasonable interpretation of the text is that "the maximum penalty" is for the single crime for which "the plea" is offered. It would seem to be beyond a reasonable interpretation to suggest that the rule refers cumulatively to the total of all sentences received for all charges which a criminal defendant may answer in a single proceeding.

*Id.* at 133.

10.

**{¶ 21}** Additionally, the court in *Johnson* referenced the discretion afforded to the trial court in deciding whether to order Johnson to serve the sentences for his crimes consecutively or concurrently. *Id.* at 133-134. Noting that Crim.R. 11 applies "only to the entry and acceptance of the plea" and "has no relevance to the exercise of the trial court's sentencing discretion," the court found that "it can hardly be said that the rule imposes upon a trial judge a duty to explain what particular matters he may, at a later date, determine are significant to the exercise of his discretion." *Id.* at 134.

**{¶ 22}** A review of case law since *Johnson* was decided and Crim.R. 11(C)(2)(a) was amended reveals Ohio appellate courts have almost always held that a trial court need not warn a defendant of the potential for consecutive sentences prior to accepting a guilty plea to multiple offenses. The only time courts deviate from this rule is when the imposition of consecutive sentences is mandatory, such as cases involving a charge of failure to comply with the order of a peace officer, *State v. Pitts*, 159 Ohio App.3d 852, 2005-Ohio-1389, 825 N.E.2d 695, ¶ 22 (6th Dist.), repeat violent offender specifications, *State v. Bragwell*, 7th Dist. Mahoning No. 06-MA-140, 2008-Ohio-3406, ¶ 57, and *State v. Whitaker*, 2013-Ohio-4434, 999 N.E.2d 278, ¶ 27, and sentences imposed for violation of postrelease control, *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766.

**{¶ 23}** Of particular note among these "exception cases" is *Bishop*, which was decided three decades after *Johnson* was released. In *Bishop*, the Ohio Supreme Court

11.

addressed the following certified question: "Whether a criminal defendant on [postrelease control] for a prior felony must be advised, during his plea hearing in a new felony case, of the trial court's ability under R.C. 2929.141 to terminate his existing [postrelease control] and to impose a consecutive prison sentence for the [postrelease-control] violation." *Bishop* at ¶ 1.

{¶ 24} The plurality in *Bishop* began its analysis by noting that Crim.R. 11(C)(2)(a) was amended since *Johnson* was decided. However, the court did not articulate whether, or to what extent, the amendment of the rule (from "charge" to "charges") impacted its longstanding holding in *Johnson*. Instead, the court distinguished *Johnson* based upon the fact that Bishop's felony sentence and the 12-month sentence attributable to his postrelease control violation were intertwined and were required to be served consecutively under R.C. 2929.141(A)(1).[2] *Id.* at ¶ 17. Because a prison sentence imposed for a postrelease control violation must be served consecutively to prison

---

[2] R.C. 2929.141(A)(1) provides:
    (A) Upon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control, and the court may do either of the following regardless of whether the sentencing court or another court of this state imposed the original prison term for which the person is on post-release control:
    (1) In addition to any prison term for the new felony, impose a prison term for the post-release control violation. The maximum prison term for the violation shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony. * * * A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony.

12.

sentences for new felony offenses that gave rise to the violation, the court found that the phrase "maximum penalty involved" in Crim.R. 11(C)(2)(a) includes the postrelease control violation sentence. *Id.* Consequently, the court found that defendants must be notified of the fact that the sentences are required to be imposed consecutively at the time of the plea hearing on the new felony offense in order to satisfy Crim.R. 11(C)(2)(a). *Id.* at ¶ 21.

{¶ 25} Regarding the issue before us, namely whether Crim.R. 11(C)(2)(a) requires notification of the potential for consecutive sentencing, *Bishop* is noteworthy for two reasons. First, *Bishop* upholds the approach taken by many intermediate appellate courts in Ohio (including this court) regarding the differential treatment of cases based upon whether consecutive sentencing is discretionary or statutorily required.

{¶ 26} Second, *Bishop* is the only decision released by the Ohio Supreme Court following the 1998 amendment to Crim.R. 11(C)(2)(a) in which the court refers to the amendment of the rule and its impact on the holding in *Johnson*. Unfortunately, the plurality in *Bishop* does little more than briefly mention this issue, stating only that "Crim.R. 11(C)(2)(a) has been amended since *Johnson* so that a single plea can now apply to multiple charges." *Id.* at ¶ 15.

{¶ 27} More problematic than the *Bishop* plurality's lack of analysis as to the import of the 1998 amendment to Crim.R. 11 is the fact that Ohio intermediate courts of appeal generally fail to even *mention* the amendment when citing *Johnson* in those

13.

decisions that have been released since the amendment. Upon our extensive research, it appears that no court has engaged in any meaningful analysis of the effect of the amendment to Crim.R. 11(C)(2)(a) upon the holding in *Johnson*. The most extensive discussion of the effect of the amendment appears in the following excerpt from Justice Kennedy's dissenting opinion in *Bishop*:

> The lead opinion correctly notes that since we decided *Johnson*, Crim.R. 11(C)(2)(a) has been amended to require the trial court to ensure that the accused understands the nature of the "charges" and the maximum penalty involved. However, we amended the rule in 1998 – almost a decade after we decided Johnson – "in light of changes in terminology used in the criminal law of Ohio effective July 1, 1996," by Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136 ("S.B. 2"), and the staff comment to the amendment does not indicate that making the word "charge" plural was intended to be a substantive change. 83 Ohio St.3d xciii, cxi. We do not make significant revisions to our procedural rules cryptically, and we have never held that our holding in *Johnson* has been abrogated by the amended rule. Ohio appellate courts continue to follow *Johnson* and hold that Crim.R. 11(C)(2)(a) does not require the trial court to advise a defendant during a plea colloquy of the possibility of consecutive sentencing. *E.g., State v. Dansby-East*, 2016-Ohio-202, 57 N.E.3d 450, ¶ 16-17 (8th Dist.);

14.

> *State v. Gabel*, 6th Dist. Sandusky Nos. S-14-038, S-14-042, S-14-043, and
> S-14-045, 2015-Ohio-2803, ¶ 13-14; *State v. Mack*, 1st Dist. Hamilton No.
> C-140054, 2015-Ohio-1430, ¶ 25.

*Id.* at ¶ 47 (Kennedy, J., dissenting); *see also id.* at ¶ 72 (Fischer, J., dissenting) (finding that the 1998 amendment to Crim.R. 11(C)(2)(a) did not disturb the holding in *Johnson* that the phrase "maximum penalty involved" means the maximum penalty for each individual charge, not the aggregate penalty if the individual sentences are imposed consecutively).

{¶ 28} For the reasons articulated by Justice Kennedy in the quote above, and because the plurality decision in *Bishop* did not expressly overrule *Johnson*, we find that the change from "charge" to "charges" under the 1998 amendment to Crim.R. 11(C)(2)(a) did not disturb the holding in *Johnson*. While the plurality in *Bishop* distinguished *Johnson*, it did not overrule *Johnson* when it had an opportunity to do so. *State v. Nave*, 8th Dist. Cuyahoga No. 107032, 2019-Ohio-1123, ¶ 11. As an intermediate court, we are not free to overrule a decision of the Ohio Supreme Court. *State v. Thrasher*, 6th Dist. Wood No. WD-06-047, 2007-Ohio-2838, ¶ 7. Instead, we are bound to follow the decision. *Id.*

{¶ 29} Our continued application of the Ohio Supreme Court's holding in *Johnson* is consistent with the practice of other Ohio appellate courts that have distinguished

15.

*Johnson* and *Bishop*. For example, in *State v. Roberts*, 9th Dist. Medina No. 19CA0004-M, 2019-Ohio-4393, the Ninth District stated:

> In *Bishop*, however, the question at hand was not whether Crim.R.
> 11(C)(2)(a) requires a defendant to be informed of the aggregate maximum
> prison term, and the plurality took care to note that 'what happened to the
> defendant in *Johnson* is a far cry from what happened' to the defendant in
> *Bishop*. Instead, *Bishop* addressed a specific question: whether a defendant
> who pleads guilty to a new felony committed while on postrelease control
> must also be informed of the consequences that could result from the
> postrelease control violation during the plea colloquy.

*Id.* at ¶ 6. Additionally, the Fifth District examined *Johnson* and *Bishop*, and found that "where post-release control is not a consideration, the concerns expressed in *Bishop* do not apply, and *Johnson* does not require a defendant be advised of the possibility of consecutive sentences." *State v. Ellis*, 5th Dist. Coshocton Nos. 2019CA0014 and 2019CA0015, 2020-Ohio-1130, ¶ 10.

{¶ 30} The decisions that have been released by courts of appeals after *Bishop* agree with the Eighth District's statement that "[u]nder Ohio law, there is no requirement for the trial court to advise of the possibility that each individual sentence may be imposed consecutively, such that a plea can be considered as involuntary in the absence of such an advisement." *State v. Cobbledick*, 8th Dist. Cuyahoga No. 108959, 2020-

16.

Ohio-4744, ¶ 6; *see also State v. Novoa*, 7th Dist. Mahoning No. 19 MA 0073, 2021-Ohio-3585, ¶ 22 (limiting *Bishop* to cases involving defendants that plead guilty to new felonies while on postrelease control and recognizing that "many appellate jurisdictions, including this Court, have continued to follow *Johnson*"); *State v. Willard*, 2021-Ohio-2552, --- N.E.3d ----, ¶ 69 (11th Dist.) ("This court and others have recognized the court's distinction in *Bishop* and have continued to apply *Johnson*.").

{¶ 31} In sum, the consensus among Ohio appellate districts on the issue at hand seems to be the following: "When a consecutive sentence is discretionary under R.C. 2929.14(C)(4), * * * the failure to inform a criminal defendant that a prison term may be run consecutive to another is not a violation of Crim.R. 11(C)(2)(a).  The Ohio Supreme Court's decision in *Bishop* did not disturb this holding in *Johnson*."  *Nave* at ¶ 12; *see also State v. Hicks*, 8th Dist. Cuyahoga No. 107022, 2019-Ohio-1368, ¶ 17-21 (relying upon the Ohio Supreme Court's decision in *Johnson* and rejecting the argument that a guilty plea was not knowingly, intelligently, and voluntarily entered based upon the trial court's failure to explain that it could elect to run felony sentence consecutive to probation violation sentence); *State v. Shepard*, 11th Dist. Ashtabula No. 2019-A-0024, 2019-Ohio-3995, ¶ 44 ("The trial court is not required to inform the defendant of the maximum total of the sentences or that the sentences could be imposed consecutively."); *Roberts*, *supra*, at ¶ 7 (upholding the defendant's guilty plea to kidnapping and rape based upon *Johnson*, and finding *Bishop* inapplicable since postrelease control was not a

17.

consideration). While trial courts often go "beyond [their] legal obligations by, among other things, discussing consecutive sentences and calculating the maximum total prison term," such efforts are not required to satisfy the requirement to inform a defendant of the maximum penalty involved under Crim.R. 11(C)(2)(a). *Shephard* at ¶ 47; *see also Johnson*, *supra*, 40 Ohio St.3d at 135, 532 N.E.2d 1295 (Brown, J., concurring) ("Though it does not rise to the level of constitutional error and though there has been a technical compliance with Crim.R. 11(C)(2), the preferred practice would be for the trial judge to inform a defendant that sentences may be imposed consecutively before accepting a guilty plea to multiple offenses.")

{¶ 32} As was the case in *Johnson*, none of the offenses to which appellant pled guilty carry a mandatory consecutive sentence. Therefore, this case is distinguishable from *Bishop* and those cases subject to its holding. Because the trial court's decision to impose consecutive sentences was discretionary, the trial court was not required to inform appellant that it could order him to serve any sentences imposed consecutively rather than concurrently. Further, the trial court's failure to provide such information was not a violation of Crim.R. 11(C)(2)(a) and did not render the plea involuntary.

{¶ 33} Accordingly, appellant's first assignment of error is not well-taken.

### B. Sentencing Considerations

{¶ 34} In his second assignment of error, appellant argues that the trial court's imposition of an 85-month term of incarceration is inconsistent with the principles and

18.

purposes of felony sentencing under R.C. 2929.11, is not supported by the seriousness and recidivism factors under R.C. 2929.12, and is not permitted under R.C. 2929.13(B)(1). Relatedly, appellant argues in his third assignment of error that the trial court erred when it ordered appellant to serve his individual sentences consecutively because the record does not clearly and convincingly support the trial court's findings under R.C. 2929.14(C)(4). Since the arguments raised in appellant's second and third assignments of error are interrelated, we will address them together.

{¶ 35} We review felony sentences under R.C. 2953.08(G)(2). *State v. Goings*, 6th Dist. Lucas No. L-13-1103, 2014-Ohio-2322, ¶ 20. We may increase, modify, or vacate and remand a trial court's sentence only if we clearly and convincingly find either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

The burden is on appellant to identify clear and convincing evidence in the record to show that the trial court erred in imposing his sentence. *State v. Torres*, 6th Dist. Ottawa No. OT-18-008, 2019-Ohio-434, ¶ 6.

19.

**{¶ 36}** As an initial matter relating to appellant's R.C. 2929.11 and 2929.12 argument, we note that the Ohio Supreme Court recently held that R.C. 2953.08(G)(2) does not permit an "appellate court to independently weigh the evidence in the record and substitute its judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 42; *see also State v. Toles*, Slip Opinion No. 2021-Ohio-3531, ¶ 1 (affirming sentencing judgment on the authority of *Jones*). Applying *Jones*, we have consistently held that "assigning error to the trial court's imposition of sentence as contrary to law based solely on its consideration of R.C. 2929.11 and 2929.12 is *no longer grounds for this court to find reversible error*." (Emphasis added.) *State v. Orzechowski*, 6th Dist. Wood No. WD-20-029, 2021-Ohio-985, ¶ 13; *see also State v. Staten*, 6th Dist. Sandusky Nos. S-20-026, S-20-027, S-21-008, 2021-Ohio-3382, ¶ 13; *State v. Vargyas*, 6th Dist. Wood No. WD-20-068, 2021-Ohio-3383, ¶ 25; *State v. Woodmore*, 6th Dist. Lucas No. L-20-1088, 2021-Ohio-1677, ¶ 17; *State v. Buck*, 6th Dist. Wood No. WD-20-031, 2021-Ohio-1073, ¶ 7; *State v. White*, 6th Dist. Wood No. WD-20-040, 2021-Ohio-987, ¶ 10.

**{¶ 37}** In light of *Jones*, and consistent with our decisions applying it, we find that we cannot consider appellant's contention that the trial court improperly applied the seriousness and recidivism factors under R.C. 2929.12 or that his prison sentence is

20.

inconsistent with the principles and purposes of sentencing under R.C. 2929.11. *Staten* at ¶ 13.

{¶ 38} Next, we turn to appellant's argument that the trial court was not permitted to sentence him to prison for his offenses, all of which were felonies of the fourth degree, under R.C. 2929.13(B)(1). This section provides, in relevant part:

> (B)(1)(a) Except as provided in division (B)(1)(b) of this section, if an offender is convicted of or pleads guilty to a felony of the fourth or fifth degree that is not an offense of violence or that is a qualifying assault offense, the court shall sentence the offender to a community control sanction or combination of community control sanctions if all of the following apply:
>
> (i) The offender previously has not been convicted of or pleaded guilty to a felony offense.
>
> (ii) The most serious charge against the offender at the time of sentencing is a felony of the fourth or fifth degree.
>
> (iii) The offender previously has not been convicted of or pleaded guilty to a misdemeanor offense of violence that the offender committed within two years prior to the offense for which sentence is being imposed.
>
> (b) The court has discretion to impose a prison term upon an offender who is convicted of or pleads guilty to a felony of the fourth or

21.

fifth degree that is not an offense of violence or that is a qualifying assault offense if any of the following apply:

* * *

(iv) The offense is a sex offense that is a fourth or fifth degree felony violation of any provision of Chapter 2907. of the Revised Code.

* * *

(vii) The offender held a public office or position of trust, and the offense related to that office or position; the offender's position obliged the offender to prevent the offense or to bring those committing it to justice; or the offender's professional reputation or position facilitated the offense or was likely to influence the future conduct of others.

{¶ 39} In general, a defendant who meets the criteria set forth in R.C. 2929.13(B)(1)(a) may not be sentenced to prison. However, the trial court has discretion to impose a prison sentence upon such a defendant if any of the factors contained in R.C. 2929.13(B)(1)(b) apply. Notably, the factors are presented in the disjunctive, meaning a prison sentence is permissible if *any* of the factors are found to apply.

{¶ 40} Here, the trial court determined that appellant was subject to a prison sentence despite the fact that he qualified for community control under R.C. 2929.13(B)(1)(a) because he pled guilty to sex offenses under Chapter 2907 of the Revised Code and he held a position that obligated him to prevent the offenses from

22.

occurring. In his brief, appellant challenges only one of these findings, namely the determination that he held a position that obligated him to prevent the offenses from occurring in this case. Appellant does not dispute that he pled guilty to five counts of unlawful sexual conduct with a minor, all of which were sex offenses and violations of R.C. 2907.04(A). Consequently, we find that the trial court was permitted to impose a prison sentence under R.C. 2929.13(B)(1)(b)(iv), irrespective of its determination under R.C. 2929.13(B)(1)(b)(vii).

{¶ 41} As his final sentencing argument, appellant contends that the trial court erred when it ordered appellant to serve his individual sentences consecutively because the record does not clearly and convincingly support the trial court's findings under R.C. 2929.14(C)(4).

{¶ 42} Our review of a trial court's order directing an appellant to serve consecutive sentences is limited to challenges of a trial court's findings under R.C. 2929.14(C)(4). *State v. Adams*, 6th Dist. Wood Nos. WD-21-017, WD-21-018, 2021-Ohio-2862, citing *State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169, ¶ 16-17. R.C. 2929.14(C)(4) provides:

> If multiple prison terms are imposed on an offender for convictions
> of multiple offenses, the court may require the offender to serve the prison
> terms consecutively if the court finds that the consecutive service is
> necessary to protect the public from future crime or to punish the offender

23.

and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 43} R.C. 2929.14(C)(4) requires the trial court to make three statutory findings before imposing consecutive sentences. *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 252; *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26. "It must find (1) that consecutive sentences are necessary to protect the public or to punish the offender; (2) that consecutive sentences are not

24.

disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) that R.C. 2929.14(C)(4)(a), (b), or (c) is applicable." *Staten*, 6th Dist. Sandusky Nos. S-20-026, S-20-027, S-21-008, 2021-Ohio-3382, at ¶ 9, citing *Beasley* at ¶ 252. Moreover, "the trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis sic.) *Beasley* at ¶ 253, citing *Bonnell* at ¶ 37.

{¶ 44} In the present case, the trial court made the requisite findings at the sentencing hearing and memorialized those findings in the sentencing entry. In particular, the court found that consecutive sentences were necessary to protect the public from future crime or to punish appellant and were not disproportionate to the seriousness of appellant's conduct and to the danger he poses to the public. The court also found that at least two of the multiple offenses committed by appellant were committed as part of a course of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses would adequately reflect the seriousness of appellant's conduct.

{¶ 45} Appellant does not contest the trial court's technical compliance with R.C. 2929.14(C)(4). Instead, he argues that the record does not clearly and convincingly support the trial court's finding that the harm he caused was so great or unusual that no single prison term would adequately reflect the seriousness of his conduct. According to appellant, the record "is ambiguous as it relates to any harm suffered by the victim. * * *

25.

By all accounts, the victim appeared to have a positive perspective of Appellant and the circumstances surrounding this matter."

{¶ 46} Appellant's argument regarding the trial court's findings under R.C. 2929.14(C)(4) fails because it is not consistent with the record in this case. Indeed, the trial court heard statements at sentencing from the state and the victim's mother that support the trial court's conclusion that the harm caused by appellant's conduct was great and unusual. Specifically, the state indicated that appellant's sexual contact with the victim occurred over a period of approximately two months when the victim was only 13 years old. At the time, appellant understood that the victim was suicidal and depressed. The victim's mother further explained that the sexual relationship had a significant negative impact on her daughter, causing psychological problems that now require medication and counseling. The trial court also reviewed appellant's presentence investigation report, which contained references to the victim's diary entries, in which she revealed that appellant was grooming her by providing her with drugs and emotional support.

{¶ 47} Upon review, we cannot say that the trial court's finding that appellant caused great or unusual harm is clearly and convincingly unsupported by the record. Appellant had a prolonged sexual relationship with a 13 year old girl with whom he resided by preying upon her vulnerable psychological condition and exacerbating it to the point where she now requires counseling and medication. Given these facts, we disagree

26.

with appellant's contention that the record is ambiguous as to harm suffered by the victim. Moreover, we find appellant's assertion that "the victim appeared to have a positive perspective of Appellant and the circumstances surrounding this matter" wholly untenable and irrelevant to the harm inquiry before us.

{¶ 48} Since the trial court made the requisite findings under R.C. 2929.14(C)(4) to support consecutive sentences, and in light of appellant's failure to meet his burden of demonstrating that the record does not clearly and convincingly support the trial court's findings, *State v. Andrews*, 6th Dist. Lucas No. L-20-1199, 2021-Ohio-3507, ¶ 14-16, we reject appellant's argument that the trial court erred when it ordered appellant to serve his individual sentences consecutively.

{¶ 49} Having rejected all of appellant's arguments relating to the trial court's imposition of sentence in this case, we find appellant's second and third assignments of error not well-taken.

## C. Ineffective Assistance of Counsel

{¶ 50} In his fourth and final assignment of error, appellant argues that he received ineffective assistance of trial counsel.

{¶ 51} To demonstrate ineffective assistance of counsel, appellant must first show that trial counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Because "effective assistance" may involve different approaches or strategies,

27.

our scrutiny of trial counsel's performance "must be highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689. Should appellant demonstrate her trial counsel's performance was defective, appellant must also demonstrate that prejudice resulted. *Bradley* at paragraph two of the syllabus.

{¶ 52} Appellant argues that he received ineffective assistance of counsel based upon trial counsel's failure to file a motion for a continuance in order to further investigate the potential conflict of interest stemming from an allegation that the trial judge previously represented the victim as a guardian ad litem.

{¶ 53} Our review of the sentencing hearing transcript reveals that trial counsel alerted the trial court judge to the potential conflict of interest arising out of a previous representation of the victim, but the judge had no memory of any such representation. Further, the victim's mother had no recollection of the trial judge's involvement in any prior proceedings involving the victim.

{¶ 54} Upon consideration of this record, we find that appellant cannot demonstrate that his trial counsel's performance was deficient or that he suffered prejudice by counsel's decision not to seek a continuance. The record contains no support for appellant's speculative claim, itself based upon an anonymous allegation received by trial counsel prior to sentencing, that the trial judge was conflicted. On the

28.

contrary, the statements of both the trial judge and the victim's mother reveal that the trial judge had not previously represented the victim, and was therefore free from any conflict of interest.

{¶ 55} Trial counsel appears to have made a tactical decision not to press the issue of the trial judge's potential conflict of interest beyond the brief inquiry that took place at the beginning of the sentencing hearing because there was no evidence to support the allegation. Such tactical decisions do not give rise to a claim for ineffective assistance of counsel. *See State v. Warner*, 8th Dist. Cuyahoga No. 95750, 2012-Ohio-256, ¶ 11, citing *State v. Pasqualone*, 121 Ohio St.3d 186, 2009-Ohio-315, 903 N.E.2d 270 and *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263 (noting that ineffective assistance of counsel arguments predicated upon such things as trial counsel's failure to request a continuance fail because they involve "strategic choices of counsel that [fall] within the realm of trial strategy and tactics that will not ordinarily be disturbed on appeal").

{¶ 56} Moreover, appellant fails to establish that he was prejudiced by trial counsel's failure to seek a continuance. Any assertion that the continuance would have led to the discovery of a conflict of interest and the subsequent disqualification of the trial judge is speculative at best. "[S]peculative claims do not support a finding of ineffective assistance." *State v. Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶ 51.

29.

**{¶ 57}** Having found that appellant has not demonstrated that his trial counsel's performance was deficient or that he was prejudiced thereby, we reject appellant's ineffective assistance of counsel claim. Accordingly, appellant's fourth assignment of error is not well-taken.

### III. Conclusion

**{¶ 58}** In light of the foregoing, the judgment of the Sandusky County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Christine E. Mayle, J.            _____
                                                JUDGE
Gene A. Zmuda, P.J.

                                      _____
Myron C. Duhart, J.               JUDGE
CONCUR.

                                      _____
                                                JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

30.