[Cite as *State v. Harris*, 2025-Ohio-5074.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                     Court of Appeals No.  {87}WD-24-091

    Appellee                               Trial Court No. 2023 CR 0269

v.

Christopher Marlin Harris, II            **DECISION AND JUDGMENT**

    Appellant                             Decided: November 7, 2025

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney
for appellee.

Dan M. Weiss, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, Christopher M. Harris, II, appeals from a judgment entered by the Wood County Court of Common Pleas following his guilty plea to the offenses of failure to comply with an order or signal of a police officer and theft. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case and Facts**

{¶ 2} On or about May 17, 2023, Harris stole property from Kroger in Bowling Green, Ohio, and then left the scene in a motor vehicle. An Ohio police officer located the vehicle and signaled Harris to pull over. Ignoring the signal, Harris led the officer on a high-speed chase that traversed approximately 35 miles. The officer's pursuit ended when Harris entered Michigan. Harris was subsequently stopped and arrested in Michigan.

{¶ 3} On June 8, 2023, Harris was indicted by the Wood County grand jury in a two-count indictment charging him with: (1) failure to comply with an order or signal of a police officer in violation of R.C. 2921.331(B) and (C)(5)(a)(ii), a third degree felony (Count one); and (2) theft in violation of R.C. 2913.02(A)(1) and (B)(2), a fifth degree felony based on the amount of property that was stolen (Count two).

{¶ 4} A nationwide warrant was issued on June 22, 2023, after Harris failed to appear for his original arraignment. Approximately three months later, Harris was arraigned via video from the Wayne County, Michigan jail. He pleaded not guilty to the charges, and the trial court imposed a $5,000 cash bond. After Harris entered his plea, defense counsel explained to the court that a competency evaluation had been conducted in Michigan and that -- according to Harris -- the report had found Harris not competent. Defense counsel added that a competency hearing was scheduled for September 22, 2023, in Wayne County. The trial court, noting that there "may be a competency issue," scheduled a pretrial in the Wood County case for October 19, 2023.

2.

{¶ 5} On November 8, 2023, defense counsel filed a "motion to raise the issue of defendant's competency to stand trial." On November 9, 2023, the trial court determined that because there was a question as to whether Ohio mental health professionals could use the Michigan competency evaluation in making a restoration recommendation in Ohio, the proper course of action would be to order a competency evaluation in Ohio. A competency hearing was then set for January 11, 2024.

{¶ 6} On January 11, 2024, it was the understanding of the parties that Harris had not yet received an assessment in Ohio because he was still in Michigan awaiting treatment to be restored to competency there. On February 15, 2024, the trial court removed Harris's case from its active docket until Harris was in the custody of Wood County.

{¶ 7} On May 3, 2024, Harris's initial defense counsel filed a motion to withdraw as his counsel. The trial court granted the motion.

{¶ 8} On June 24, 2024, Harris was transported from Wayne County to Wood County. At a status hearing held on June 27, 2024, new counsel was appointed for Harris. The trial court noted that there was an outstanding request for a competency evaluation, and Harris's new counsel indicated that he was going to try to obtain a copy of a competency report from the state of Michigan. Later in the hearing, Harris himself volunteered that the Michigan competency evaluation "ended up being nullified" because he was found to be competent. Following Harris's statement, the trial court, addressing both Harris and his counsel, asked that they either request "to follow through with that

3.

competency order and the evaluation," or indicate that "we're just setting it for a jury trial, or whatever that might be." Harris neither renewed his request for a competency evaluation nor filed any kind of formal waiver, and the competency evaluation never occurred.

{¶ 9} Plea negotiations took place, and on August 15, 2024, Harris withdrew his not guilty plea and entered a guilty plea to Count one, failure to comply with an order or signal of a police officer, a third degree felony, and to amended Count two, theft, a first degree misdemeanor. During the plea colloquy, Harris stated that he was able to enter the agreement knowingly and voluntarily, and that he had an opportunity to read the plea agreement and go through it with his attorney. He indicated that he understood what the agreement said, and that he "absolutely" understood that the trial court did not have to go along with that agreement. He also indicated his understanding that the court could go straight to sentencing that day. Harris stated that he was satisfied with his attorney's advice and that he understood that he was waiving a number of constitutional rights, including the right to a trial. Harris stated that he understood all of the allegations in the indictment, and that he was prepared to make a complete admission to those allegations, knowing that doing so would expose him to a potential prison sentence. Finally, Harris stipulated that the facts as alleged by the state would have led to his conviction on both counts. The court accepted Harris's pleas and set the sentencing for a later date.

{¶ 10} Sentencing took place on October 24, 2024. At the hearing, and prior to the imposition of sentence, the trial court heard from defense counsel and from Harris

4.

himself. Defense counsel noted that Harris had been in custody for "the better part of the last year-and-a-half," and so had time to think about what had gotten him there and to "try and get his mental health and physical health back in line." According to defense counsel, Harris "had the time to gather his thoughts, really collect himself," and was in a much better frame of mind than he was at the time the crimes occurred. Defense counsel explained:

> I think the PSI is particularly illuminating with his candor with the things that he's struggled with that, really, led him to this point, both in his family history with some of the experiences that he's had to go through. That he's, certainly, been pushed down a path that if he had not been…really traumatized at an early age, we probably wouldn't be having this conversation with him at this point, but those were decisions that were made, some of which were for him or against his behalf, and other decisions Mr. Harris has made and he's here now accepting full responsibility for those. We were able to get a room available for him up at…Oakdale Park in Michigan where he would be able to get in both for mental health treatment and physical rehab, which he would really benefit from both.

{¶ 11} Harris was next to address the trial court. He began by apologizing to the court, the city of Bowling Green, the state of Ohio, "the jurisdiction of Wood County," the employees of the Bowling Green Kroger, and "every single member of law enforcement and the community who were both directly or indirectly affected by the events of May 17th, 2023 for which [he] was responsible." He stated that he had no plans to return to illicit drug use, although he realized that he had "a problem" with fentanyl, heroin, and cocaine, especially when he was without his psychotropic medication or was not using his insulin. Harris stated that he had learned his lesson and was committed to

5.

changing "the entire trajectory of [his] lifetime" by devoting himself to "pushing legislation for common sense policies for gun control, especially in minority neighborhoods, and, particularly, as it affects the youth." He stated that he had time to understand the events that led to his incarceration, but that he "acted out" because he never had guidance from persons with whom he could talk about things that were going on in his life.

{¶ 12} The trial court indicated that it had reviewed the presentence investigation. In particular, the trial court noted that Harris had a lengthy criminal history, and that the failure to comply offense in the current case was "very dangerous," inasmuch as it involved a high-speed pursuit that continued for over 30 minutes, and spanned a distance of more than 35 miles, including over a pedestrian sidewalk next to where children were playing soccer.

{¶ 13} Ultimately, the trial court sentenced Harris to serve 18 months in prison for failure to comply with an order or signal of a police officer and 180 days in prison for the misdemeanor theft charge. The term for the misdemeanor theft charge was ordered to be served concurrently with the term imposed for the felony failure to comply. The trial court granted Harris credit for time served, in the amount of approximately 127 days.

**Assignments of Error**

{¶ 14} On appeal, Harris asserts the following assignments of error:

I.      Appellant's arraignment and plea were not knowing and
        voluntary as the court failed to determine appellant's
        competency prior to accepting appellant's plea.

6.

II.     Appellant received ineffective assistance of counsel.

**Law and Analysis**

**First Assignment of Error**

{¶ 15} In his first assignment of error, Harris asserts that the trial court erred when it failed to conduct a competency hearing before accepting his guilty plea and that, as a result of this error, Harris's arraignment and plea were not knowing and voluntary. Harris contends that his competency was in question from the start of the case.  He further contends that his statement to the Ohio court that the issue of his incompetency had been "nullified" by the Michigan court's finding was not sufficient to relieve the Ohio court of its obligation to conduct a competency hearing.

{¶ 16} "[T]he Due Process Clause of the Fourteenth Amendment to the United States Constitution requires procedures adequate to 'protect a defendant's right not to be tried or convicted while incompetent to stand trial.'" *State v. Mills*, 2023-Ohio-4716, ¶ 10, quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975). Thus, "[t]he conviction of a defendant who is not competent to enter a plea violates due process of law." *State v. Moore*, 2020-Ohio-3459, ¶ 31 (8th Dist.), citing *State v. Skatzes*, 2004-Ohio-6391, ¶ 155. (Additional citations omitted.)

{¶ 17} "The competence required to enter a guilty plea is the same as the competence required to stand trial." *Id.* at ¶ 31, citing *State v. Miniffee*, 2019-Ohio-4464, ¶ 12 (8th Dist.). "A defendant is incompetent when he 'is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense.'" *Mills* at ¶ 11, citing R.C. 2945.37(G); *Dusky v. United States*, 362 U.S. 402, 402 (1960)

7.

("[T]he test must be whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him.").

{¶ 18} "[T]he court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial." R.C. 2945.37(B). "If the issue is raised before the trial has commenced, the court *shall* hold a hearing on the issue." (Emphasis added.) *Id.* "Thus, there is no question that where the issue of the defendant's competency to stand trial is raised prior to the trial, a competency hearing is mandatory." *State v. Bock*, 28 Ohio St.3d 108, 109 (1986).

{¶ 19} "A defendant is presumed to be competent to stand trial." R.C. 2945.37(G). "To rebut this presumption, the defendant's incompetency to stand trial must be established at the hearing by a preponderance of the evidence." *Mills* at ¶ 12, citing R.C. 2945.37(G).

{¶ 20} By requesting a competency examination, Harris's counsel clearly raised the issue of Harris's competency. Thus, under R.C. 2945.37(B), the trial court should have held a competency hearing. *See Mills* at ¶ 13 (defendant's request for a competency hearing triggered the trial court's obligation to hold a competency hearing under R.C. 2945.37(B)).

{¶ 21} We reject the State's argument that Harris "abandoned" his request for a competency determination when he did not respond to the trial court's June 27, 2024 request that he reassert his request for a competency evaluation. *See Mills* at ¶ 13 (failure

8.

of defendant's attorney to raise the issue after the initial request for a competency examination did not excuse the trial court from its duty to hold a competency hearing).

{¶ 22} Although clearly error, "a court's failure to hold a mandatory competency hearing is not a basis for automatic reversal." *Mills* at ¶ 14, citing *Bock* at 110. Instead, "the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *Id.*; *see also State v. Berry*, 72 Ohio St.3d 354, 359 (1995), quoting *Bock* at 110 (the right to a competency hearing "rises to the level of a constitutional guarantee where the record contains 'sufficient indicia of incompetence,' such that an inquiry into the defendant's competency is necessary to ensure the defendant's right to a fair trial").

{¶ 23} Because incompetency is measured by the statutory criteria, i.e., the ability to understand the nature and objective of the proceedings and to assist in one's defense, "'[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity.'" *Mills* at ¶ 15, quoting *Bock* at 110. "Indeed, '[a] defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *Id.*

{¶ 24} In determining whether the record fails to reveal sufficient indicia of Harris's incompetency -- and, thus, whether the trial court's failure to hold a competency hearing was harmless -- we must consider "the totality of the evidence," including "both evidence of incompetency and evidence of competency." *Mills* at ¶ 21. (Additional citations and quotations omitted.)

9.

**{¶ 25}** Here, the totality of the record -- including Harris's own (consistently reasonable and appropriate) statements during his arraignment in September 2023, his plea colloquy in August 2024, aWnd his sentencing hearing in October 2024 -- clearly demonstrates Harris's understanding of the proceedings and, further, indicates his ability to assist in his defense. That Harris may have a history of mental health problems and/or drug dependency does not, in itself, alter this conclusion. Here, there is nothing to suggest that any mental condition (or any consequences of any prior drug use or abuse) precluded him from understanding the nature and objective of the proceedings against him, assisting in his defense, or in entering knowing, intelligent, and voluntary guilty pleas. Because the record lacks sufficient indicia of Harris's incompetency, the trial court's failure to hold a competency hearing constituted harmless error. Accordingly, Harris's first assignment of error is found not well-taken.

**Second Assignment of Error**

**{¶ 26}** Harris argues in his second assignment of error that he received ineffective assistance of counsel when his new counsel failed to insist that a competency evaluation be performed as requested by the motion filed on November 8, 2024. To establish ineffective assistance of counsel, Harris must show "'(1) deficient performance of counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different.'" *State v. Warren*, 2024-Ohio-1072, ¶ 38 (6th Dist.), quoting *State v. Hale*, 2008-Ohio-3426, ¶ 204, citing *Strickland v.*

10.

*Washington,* 466 U.S. 668, 687-88 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151 (2002). "Because 'effective assistance' may involve different approaches or strategies, our scrutiny of trial counsel's performance 'must be highly deferential' with a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *State v. Whitman*, 2021-Ohio-4510, ¶ 51 (6th Dist.), quoting *State v. Bradley*, 42 Ohio St.3d 136 (1989). "A properly licensed attorney in Ohio is presumed to execute his duties in an ethical and competent manner." *Warren* at ¶ 38, quoting *State v. McDonald*, 2015-Ohio-1869, ¶ 18 (6th Dist.), citing *State v. Hamblin*, 37 Ohio St.3d 153, 155-156 (1988).

{¶ 27} "Counsel will not be found ineffective for failing to request a competency evaluation 'when the defendant does not display sufficient indicia of incompetency to warrant a competency hearing.'" *State v. Kendall*, 2025-Ohio-2394, ¶ 18 (3d Dist.), quoting *State v. Lawson*, 2021-Ohio-3566, ¶ 101. As indicated above, the record in this case does not contain sufficient indicia of incompetency to support a finding that Harris was incompetent. To the contrary, review of the record both demonstrates Harris's understanding of the proceedings and indicates his ability to assist in his defense Thus, Harris fails to demonstrate that his counsel performed deficiently in failing to renew the November 8, 2024 request for a competency evaluation. Even if we assume for purposes of argument that Harris's trial counsel's performance was deficient in failing to renew the

11.

issue of competency, Harris still fails to show that he was prejudiced by the alleged failure. Harris's second assignment of error is therefore found not well-taken.

## Conclusion

{¶ 28} The judgment of the Wood County Court of Common Pleas is affirmed. Appellant is to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J. _____

_____
JUDGE

Myron C. Duhart, J. _____

_____

Charles E. Sulek, P.J. _____
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.