[Cite as *State v. Ryan*, 2022-Ohio-1888.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio

       Appellee

v.

Luke T. Ryan

       Appellant

Court of Appeals Nos. OT-21-027
OT-21-028

Trial Court Nos. 2019 CR 233
2021 CR 138

**DECISION AND JUDGMENT**

Decided: June 3, 2022

* * * * *

James VanEerten, Ottawa County Prosecuting Attorney, and
Blake Skilliter, Assistant Prosecuting Attorney, for appellee.

Andrew R. Mayle, Ronald J. Mayle, and
Benjamin Padanilam for appellant.

* * * * *

**MYERS, J.**

{¶ 1} In this consolidated appeal, this matter is before the court on the appeal of

appellant, Luke Ryan, challenging the trial court's compliance with Crim.R. 11 in

accepting his guilty plea and challenging the imposition of consecutive sentences. Finding no error, we affirm.

## I. Background

{¶ 2} On October 24, 2019, Ryan was indicted on three counts of sexual battery in violation of R.C. 2907.03(A)(7) and (B), a high-tier felony of the third degree, in case No. 2019-CR-233. The charges arose from incidents in 2014 and 2015, when Ryan had sexual encounters with a student while employed as a teacher at Genoa High School. Police had collected evidence of the incidents, including documentation from the hotel where one of the incidents occurred. Ryan entered a not guilty plea at arraignment on November 6, 2019.

{¶ 3} While the sexual battery charges were pending, and 6 years after the incident at the hotel, Ryan attempted to dispute the check-in times with the hotel and he initiated a dispute with his bank over charges linked to the hotel stay. On July 12, 2021, Ryan was charged by a bill of information with one count of tampering with evidence in violation of R.C. 2921.12(A)(1),(2) and (B), a felony of the third degree, in case No. 21-CR-138.

{¶ 4} On July 23, 2021, Ryan withdrew his not guilty plea and entered a plea of guilty to count two of case No. 2019-CR-233, sexual battery in violation of R.C. 2907.03(A)(7) and (B), a high-tier felony of the third degree, and to the sole count in case No. 2012-CR-138, tampering with evidence in violation of R.C. 2921.12(A)(1),(2) and

2.

(B), a felony of the third degree. The trial court accepted the plea, and continued sentencing pending a presentence investigation and report.

{¶ 5} On September 10, 2021, the trial court held a combined sentencing hearing for case Nos. 2019-CR-233 and 2021-CR-138. The trial court determined Ryan to be a Tier III sex offender, notified him of his registration requirements, and imposed a prison term of 60 months as to count two, sexual battery, in case No. 2019-CR-233. As to the sole count in case No. 2021-CR-139, tampering with evidence, the trial court imposed a prison term of 36 months. After addressing the R.C. 2929.14(C) findings, the trial court ordered the two prison terms to be served consecutively. Counts 1 and 3 in case No. 2019-CR-233 were dismissed pursuant to the plea agreement.

## II. Issues on Appeal

{¶ 6} Ryan filed a timely appeal of the judgment, and asserts the following as error for our review:

1. The trial court erroneously failed to comply with Crim.R. 11(C)(2)(a) by not personally determining that Luke Ryan's plea was made with an understanding of the nature of the charges.

2. The court below erred in imposing consecutive sentences when the record shows that this was disproportionate to any supposed "danger" that Luke Ryan poses "to the public" at large after serving concurrent prison terms of five and three years.

3.

## A.    Guilty Plea

{¶ 7} In his first assignment of error, Ryan argues that the trial court failed to ensure his plea was knowing and voluntary, in compliance with Crim.R. 11(C).  He argues that when he voiced some confusion when asked if he understood what the state would have to prove, the court failed to ensure that he understood the nature of the charges.

{¶ 8} At the hearing, the trial court first addressed registration requirements for the sex offense, and when asked to identify the charges to which he would plead guilty, Ryan responded, "one count of sexual battery and one count of tampering with evidence, sir." The trial court then addressed Ryan, as follows:

> Trial Court:  So in the 19-CR-233, Count 2 is sexual battery, a felony of the third degree, do you understand if we were to have a trial, that the State of Ohio would need to prove certain things?  They would need to prove the elements of that offense.
>
> Do you understand what the State of Ohio would need to prove to show that you are guilty of that offense?
>
> Ryan:  Honestly, sir, not really.
>
> Trial court:  Let me ask [trial counsel], have you had the opportunity to explain the concept of elements of an offense to your client and what the

elements of this offense and tampering with evidence with evidence [sic.] are?

Counsel: Yes, Your Honor.[1] I will at the appropriate time go through the elements with my client, Your Honor. I would ask the Court for leave to enter into a colloquy with him as it relates to the elements of the offense.

Trial Court: Okay. You would waive any further explanation of the elements?

Counsel: I would, Your Honor.

Trial Court: Mr. Ryan, what do you understand to be the maximum penalty you can receive for Count 2, sexual battery, a felony of the third degree?

Ryan: Sixty months and $10,000.

Trial Court: Sixty months in prison and a $10,000 fine, correct.

Now as to the tampering with evidence, a felony of the third degree, what do you understand to be the maximum penalty you could receive for that offense?

Ryan: 36 months and $10,000.

---

[1] Ryan refers to this comment as perfunctory and "throat clearing." We find that the transcript is clear – counsel was confirming that he had explained the elements of the offenses to his client.

Trial court: That is correct. Do you understand that these sentences could be run consecutively, meaning end to end, so 96 months in prison potentially?

Ryan: Yes, sir.

Trial Court: And a fine of $20,000, right?

Ryan: Yes, sir.

{¶ 9} The trial court then reviewed the plea forms with Ryan. Ryan confirmed that he previously read them and counsel confirmed he reviewed the forms with Ryan that morning after forwarding them to Ryan earlier in the week. Ryan indicated he had enough time to think about his change of plea, had enough time to confer with his counsel, and felt his counsel answered all of his questions and provided him with satisfactory representation.

{¶ 10} Later in the plea hearing, the court asked Ryan's counsel to go through the elements. Ryan's counsel proceeded to detail the facts of the case, all of which Ryan confirmed. Those facts included that he was a teacher, that he engaged in sexual conduct with a student, that it was part of a continuing course of conduct, and that documents from a hotel could serve as verification. Ryan further confirmed that several years later, he returned to the hotel to dispute the hotel records. The state added the fact, which Ryan confirmed, that he used a debit card near the hotel on the same date.

6.

**{¶ 11}** The court accepted Ryan's guilty pleas and found that he understood the nature of the charges, the effect of his guilty plea, and the penalties that could be imposed. The court found the pleas were knowingly, voluntarily, and intelligently made.

**{¶ 12}** Ryan now argues that the trial court erred by failing to personally address his confusion regarding the elements of the offenses as part of the required Crim.R. 11(C) colloquy. Crim.R. 11(C)(2) provides:

In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

7.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 13} Both the United States and Ohio Constitutions require a knowing, intelligent, and voluntary plea. *State v. Carrisales,* 6th Dist. Ottawa No. OT-17-007, 2018-Ohio-520, ¶ 20, citing *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To ensure a proper plea, a trial court must address the defendant personally and ensure the defendant understands his rights and the consequences of his guilty plea. *State v. Ballard,* 66 Ohio St.2d 473, 474-475, 423 N.E.2d 115 (1981). "The underlying purpose of Crim.R. 11(C) is to ensure that the information a defendant needs to make a voluntary and intelligent decision about pleading guilty is conveyed to him." *Carrisales* at ¶ 20, citing *Ballard* at 479-480.

{¶ 14} In explaining constitutional rights, a trial court must strictly comply with Crim.R. 11(C), with a failure to do so resulting in an invalid plea, presumed to be neither knowing nor voluntary. *Carrisales* at ¶ 21, citing *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31 (additional citation omitted.). However, a trial court need only substantially comply with Crim.R. 11(C) in explaining non-constitutional

8.

rights. *Carrisales* at ¶ 22, citing *Rinehart* at ¶ 18; *State v. Ragusa,* 6th Dist. Lucas No. L-15-1244, 2016-Ohio-3373, ¶ 4 (additional citation omitted.). If a defendant "subjectively understands the implications of his plea and the rights he is waiving[,]" a trial court may be determined as having substantially complied with Crim.R. 11(C). *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Substantial compliance is considered based on the totality of the circumstances. *Nero* at 108.

{¶ 15} In this case, Ryan does not dispute the trial court's compliance with Crim.R. 11(C) relative to his waiver of constitutional rights. Instead, Ryan argues that he did not understand the nature of the charges against him because the trial court failed to personally explain the elements of the offenses, implicating a non-constitutional right. A trial court, however, need not explain the elements as part of accepting a guilty plea, an issue we previously addressed in *State v. Duhart,* 6th Dist. Lucas No. L-16-1283, 2017-Ohio-7983.

{¶ 16} In *Duhart,* the defendant challenged the trial court's compliance with Crim.R. 11(C) on appeal, based on the trial court's failure to explain the elements of each offense to which he entered a guilty plea. In rejecting that challenge, we found "the case law makes clear that the trial court was not obligated to recite the elements or explain the facts supporting each offense in order to render his plea 'knowing' and 'voluntary.'" *Duhart* at ¶ 10. Additionally, Duhart's guilty plea was a complete admission to the charges, which included admission to the factual basis for each element of the charged

9.

offenses. *Id.* at ¶ 9, citing *State v. Fuller,* 12th Dist. Butler No. CA2008-09-240, 2009-Ohio-5068, ¶ 105-106.

{¶ 17} Duhart acknowledged his understanding of the charges in his written plea, and also indicated he understood the charges and had ample time to consult with his trial counsel before entering the plea. *Id.* at ¶ 14-15. Considering the totality of the circumstances, we found the trial court substantially complied in explaining Duhart's non-constitutional rights, despite failing to explain the elements for the offenses. *Duhart* at ¶ 16.

{¶ 18} In *State v. Carrisales,* 6th Dist. Ottawa No. OT-17-008, 2018-Ohio-520, we addressed a similar issue. In *Carrisales,* the trial court explained the consequences of a guilty plea to a gross sexual imposition charge, the maximum prison term and fine, and the registration requirements, among other things. The court asked Carrisales if he read and understood the plea form, and he confirmed he did. Then, the following exchange occurred:

[Court:] What is it you are intending to plead guilty to today?

[Carrisales:] F–4 gross sexual imposition.

[Court:] Do you understand what the State would need to prove to show that you are guilty of the offense?

[Carrisales:] No, sir.

[Court:] Okay. Do you know what you are alleged to have done?

10.

[Carrisales:] Yeah.

[Court:] [Defense counsel], have you had the opportunity to explain to Jordan what this offense is?

[Defense Counsel:] Yes. Prior to today, I visited Jordan. We went over obviously the offense. It was a sexual battery. We went over what the offense—what the elements of the offense were that the State would need to prove, so we would waive reading of that at this time.

*Carrisales* at ¶ 4.

**{¶ 19}** In *Carrisales,* we found that the trial court substantially complied with Rule 11, and that the rule did not require the court to personally notify the defendant of the facts.  We found that, although Carrisales said he did not know the elements of gross sexual imposition, he understood "the conduct he was accused of," and his trial counsel informed the court he had discussed the elements with Carrisales and expressly waived a reading of those elements.  *Id.* at ¶ 25.  Thus, "under the totality of the circumstances, Carrisales understood the implications of pleading guilty to a charge of gross sexual imposition." *Id.*

**{¶ 20}** The Twelfth District Court of Appeals addressed a defendant's understanding of the nature of the charges in *State v. Goens,* 12th Dist. Butler No. CA2005-06-174, 2006-Ohio-4324.  In *Goens,* the defendant made a similar argument as Ryan regarding the trial court's failure to specifically ask if the appellant understood the

11.

nature of the charges. The court noted the subjective nature of the determination, but concluded that, "if appellant receives the proper information, then we can ordinarily assume that he understands the information." *Goens* at ¶ 11, quoting *State v. Carter,* 60 Ohio St.2d 34, 38, 396 N.E.2d 757 (1979) (additional citation omitted.).

{¶ 21} In considering the totality of the circumstances, the Twelfth District noted that "[t]he record must demonstrate that appellant has acquired an understanding of the nature of the charges against him, whether from the trial court itself, the prosecutor, or some other source, such that the trial court can determine that appellant understands the charges to which he was pleading guilty." (Citation omitted.) *Goens* at ¶ 12. In *Goens,* the trial court listed the charges and detailed the maximum penalties, followed by the prosecutor reciting the facts underlying the charges. While the record contained no question by the trial court to Goens, personally questioning whether Goens understood the charges, the Twelfth District concluded "appellant received the pertinent information from the trial court's recitation of the charges, along with the state's extensive reporting of the circumstances of the crimes and the elements of the offenses." *Id.* at ¶ 21.

{¶ 22} Consistent with our prior decisions in *Duhart* and *Carrisales,* we agree with the Twelfth District in *Goens,* and find that a personal inquiry by the trial court and a recitation of the elements of the offense is not required. Instead, the record must demonstrate the defendant's understanding of the charges, whether that understanding

12.

was obtained "from the trial court itself, the prosecutor, or some other source." *Goens* at ¶ 12. The record, in this case, demonstrates understanding.

{¶ 23} Like *Goens,* the totality of the circumstances in the present case establish that Ryan understood the nature of the offenses. The trial court asked Ryan if he knew which charges were part of his guilty plea, and Ryan stated the exact charges as well as the maximum prison term for each. Later, in response to his trial counsel's questioning, Ryan confirmed the underlying facts regarding the conduct that comprised each offense. Ryan entered a guilty plea which "is a complete admission of the defendant's guilt." Crim.R. 11(B); *see also Duhart* at ¶ 9. Finally, Ryan acknowledged that his trial counsel had discussed the plea with him, that he reviewed and signed the plea form indicating he understood the nature of the charges and any possible defenses, and that he received satisfactory and competent advice from his attorneys.

{¶ 24} Therefore, we find the trial court substantially complied in ensuring Ryan understood the nature of the charges, and the law did not require an additional explanation of the elements of each offense "where the record contains a representation by defense counsel that the nature of the offense has been explained to the accused." (Citation omitted) *State v. Fitzpatrick,* 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 57. Ryan entered a guilty plea in this matter, recited the underlying facts in a colloquy with his trial counsel, and while the trial court did not personally inquire regarding his understanding, Ryan demonstrated understanding of the charges.

13.

Therefore, the trial court substantially complied with Crim.R. 11(C)(2)(a), and Ryan's first assignment of error is not well-taken.

## A. Consecutive Sentences

{¶ 25} In his second assignment of error, Ryan challenges the imposition of consecutive sentences. R.C. 2953.08(G)(2) governs our review of felony sentences, and allows us to "increase, reduce, or otherwise modify a sentence" or vacate and remand for resentencing only if we clearly and convincingly find either (a) that the record does not support the sentencing court's finding or (b) that the sentence is otherwise contrary to law. Appellant bears the burden of identifying clear and convincing evidence in the record showing error in the imposition of sentence. *State v. Whitman,* 2021-Ohio-4510, 182 N.E.3d 506, ¶ 35 (6th Dist.), citing *State v. Torres,* 6th Dist. Ottawa No. OT-18-008, 2019-Ohio-434, ¶ 6.

{¶ 26} Before imposing a consecutive sentence, the trial court must perform the three-step analysis under R.C. 2929.14(C)(4)(c), make the required findings at the sentencing hearing, and incorporate those findings into the sentencing entry, "but it has no obligation to state reasons to support its findings[.]" *State v. Cannon,* 6th Dist. Lucas No. L-21-1083, 2021-Ohio-4620, ¶ 7-8, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. Pursuant to R.C. 2929.14(C)(4)(c), the trial court must determine that consecutive sentences are (1) necessary to protect the public from future crime or to punish the offender; (2) are not disproportionate to the seriousness of

14.

the offender's conduct and to the danger posed to the public; and (3) necessary to protect the public from future crime by the offender, considering the offender's history of criminal conduct. *Id.* at ¶ 8, citing *State v. Banks,* 6th Dist. Lucas No. L-13-1095, 2014-Ohio-1000, ¶ 11.

{¶ 27} Ryan focuses on the second step of the analysis, arguing the record did not demonstrate he posed any danger to the public, necessitating a consecutive rather than concurrent prison term. Specifically, Ryan contends that a trial court must perform a dual disproportionality analysis, addressing both the seriousness of the conduct and the danger to the public, and in this case, the trial court addressed only the seriousness of the conduct. In support, Ryan argues that his ORAS score[2] indicated a low risk of recidivism and that he gave up his teaching license and therefore will no longer have access to students, making a repeat offense impossible. Ryan also discounts comments by the trial court regarding his character as insufficient to overcome the low risk that he might reoffend.

{¶ 28} After considering the principles and purposes of felony sentencing and the factors under R.C. 2929.11 and 2929.12, as well as the statements in mitigation, the victim impact statement, the presentence investigation report, and letters written in Ryan's support, the trial court imposed the maximum prison sentence as to each charge, 60 months as to Count 2 in case 2019-CR-123, sexual battery in violation of R.C.

---

[2] Ryan references the Ohio Risk Assessment System tool used by trial courts in "sentencing or another purpose," as provided by R.C. 5120.114(A).

15.

2907.03(A)(7) and (B), a felony of the third degree, and 36 months as to the sole count in case 2021-CR-138, tampering with evidence in violation of R.C. 2921.12(A)(1) and (2), a felony of the third degree. The trial court designated Ryan a Tier III sexual offender, and pursuant to the plea agreement, dismissed Counts 1 and 3 in case 2019-CR-123.

{¶ 29} As to consecutive sentencing, the trial court addressed the statutory findings pursuant to R.C. 2929.14(C)(4) within the sentencing entry and at the sentencing hearing, and ordered the sentences to be served consecutively. Additionally, the trial court made the following statements on the record:

> Now as I said, I have reviewed the pre-sentence report and I have reviewed the letters that I received, some I received sometime ago, some came in yesterday. Others came in as late as today.
>
> I have read each and every one of those and I thank those authors for their input in this matter.
>
> I reviewed the sentencing memorandum prepared by the defendant.
>
> The letters, a couple of them caught my attention. Well, they all did, letters from parents, spouse, business associates and pastors all praising you, but there was one that thought this letter was coming to me in advance of a jury trial and that called into question the authenticity of the victim's statement, and another from a family member who tells me that you

16.

maintain your innocence and that you pled to this offense only to save your family from the ordeal of a trial and the pain that would be involved.

That is troubling because you told me at the plea change that you did the things to which the State has alleged, but you are apparently still maintaining your innocence in some circles.

These letters cast you as a hard worker, a leader, knowledgeable in all things agricultural, helpful, trustworthy. They are glowing letters.

You cast yourself similarly in the interview that you had with the Probation Department, but then also referred to yourself as eye candy and a TILF, an acronym that should not exist in this world.

Early on in the investigation, you denied a sexual relationship with the victim while she was a student, maintained that that only occurred after she graduated, but the Sheriff's Office, Detective Gloor was relentless in her work and found concrete evidence of hotel receipts, credit card charges, indicating that that sexual relationship occurred while she was a student and it was only when confronted with this concrete evidence that you acknowledged the sexual relationship with your student.

You minimize your efforts to conceal the evidence here, too. I mean, obviously, you went to the bank. You went to the hotel and tried to

dispute charges, tried to dispute check-ins, and that is how it was relayed to us. "Well, no, I was just disputing a charge."

No, you were trying to cover your tracks, trying to get rid of evidence that was damning to you.

Now you did attempt with the Probation Department to minimize the sexual conduct saying that perhaps you only had sex with the victim ten times except for the one time you had sex ten times in one day, so still bragging while you minimize.

You had sex in the Genoa High School Greenhouse, in your classroom, during sporting events. You had sex at a couple of motels several times and in the home of one of your friends in a spare bedroom.

The police reports also go on to talk about other girls, students who felt that they were groomed by you by sexual comments and things.

We are not here for that, but we are here for the case that we are all focused on today.

Probation does not believe that you are in fact remorseful and that your regret is the regret of being caught.

You are seen by many in the community, including yourself, as being an outstanding teacher, an agricultural resource, a citizen.

However, the pre-sentence report and other information reveals that you are someone who lacks empathy and remorse and creates false realities in which the only end is to manipulate others and to get what you want without caring about your victim or others, and without really meaning what you say.

**{¶ 30}** R.C. 2953.08(G) places the burden on Ryan to "identify clear and convincing evidence that the record does not support the trial court's findings under R.C. 2929.14(C)(4)." (Citation omitted) *State v. Kiefer,* 6th Dist. Ottawa No. OT-21-005, 2021-Ohio-3059, ¶ 8. Ryan's challenge to the trial court's findings regarding danger to the public focuses on his lack of a significant criminal history and low ORAS score, indicating a low risk of recidivism, and not a lack of evidence to support the trial court's findings. We recently addressed and rejected this argument in *State v. Kiefer.*

**{¶ 31}** In *Kiefer,* the defendant received a low ORAS score, an indication of "low risk" for recidivism. The state argued that, despite the low score, the nature and duration of Kiefer's numerous sex-offenses involving his minor step-daughter demonstrated a danger to the public. *Kiefer* at ¶ 3. Additionally, at the sentencing hearing, the victim's advocate read a statement into the record detailing the minor's mental health injuries and ongoing fear of others. *Id.* at ¶ 3. Kiefer also acknowledged his controlling conduct and stated he "developed an obsession" with his step-daughter. *Id.* at ¶ 4.

19.

**{¶ 32}** On appeal, Kiefer disputed the trial court's finding of danger based on his low risk of recidivism. In addressing this argument, we noted the disproportionality consideration under R.C. 2929.14(C)(4), relative to the danger posed to the public, is separate from the recidivism determination under R.C. 2929.12. *Id.* at ¶ 18. "Therefore, while the trial court's consideration of whether the offender is likely to recidivate may show the danger the offender poses to the public, R.C. 2929.14(C) requires the trial court to find that consecutive sentences are not disproportionate to that danger, whatever it may be." (Citation omitted) *Id.* In *Kiefer,* we concluded that Kiefer failed to demonstrate the consecutive sentences were disproportionate to the danger to the public, considering the additional, uncharged offenses and "the seriousness of his offenses and his development of a sexual obsession with a minor." *Id.* at ¶ 19-20.

**{¶ 33}** Like the appellant in *Kiefer,* Ryan argues the low risk of recidivism and ignores the evidence that supports the trial court's findings for consecutive sentences. While Ryan entered his guilty plea to one count of sexual battery, he was originally charged with three counts and the trial court noted many such instances of sexual conduct with that particular student, as well as additional students who believed they were being groomed by appellant. The trial court also noted the harm done to Ryan's victim and disbelieved Ryan's profession of remorse. Finally, the trial court found Ryan's overall conduct demonstrated a manipulative person who lacked empathy for others. While Ryan gave up his teaching license and therefore might not commit this specific offense

again (sex with a student), he certainly could commit a sexual offense again, particularly with a younger person, posing a danger to the public.

{¶ 34} Ryan's argument mainly highlights his positive qualities, with no indication that the trial court's findings lacked a factual basis in the record. His argument "only disputes the weight that should be given the facts as support for consecutive sentences, when contrasted with other indications of his good character." *State v. Andrews,* 6th Dist. Lucas No. L-20-1199, 2021-Ohio-3507, ¶ 17. Furthermore, Ryan does not dispute that the trial court engaged in the required analysis under R.C. 2929.14(C). He also does not point to any deficiency in the record, relative to the trial court's factual findings in applying R.C. 2929.14(C). We must affirm the imposition of consecutive sentences where we can "discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings." *Andrews* at ¶ 12, citing *State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 29.

{¶ 35} Considering this record, Ryan fails to meet his burden of demonstrating a lack of clear and convincing evidence to support the trial court's determination that imposition of consecutive sentences was not disproportionate to the danger he poses to the public. We therefore find Ryan's second assignment of error not well-taken.

21.

### III.    Conclusion

**{¶ 36}** Based on the foregoing, we affirm the judgment of the Ottawa County Court of Common Pleas.  Ryan is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.     

_____
JUDGE

Gene A. Zmuda, J.     

_____

Beth A. Myers, J.     
CONCUR.

JUDGE

_____
JUDGE

Judge Beth A. Myers, First District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.

23.