[Cite as *State v. Deselms*, 2022-Ohio-3769.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                          Court of Appeals No.  OT-21-037

     Appellee                                        Trial Court No.  21CR127

v.

Kyle A. Deselms                                   **DECISION AND JUDGMENT**

     Appellant                                      Decided:  October 21, 2022

* * * * *

James VanEerten, Ottawa County Prosecuting Attorney, and
Barbara Gallé Rivas, Assistant Prosecuting Attorney, for appellee.

Brett A. Klimkowsky, for appellant.

* * * * *

**ZMUDA, J.**

## I.     Introduction

{¶ 1} Appellant, Kyle A. Deselms, appeals from the judgment of the Ottawa County Court of Common Pleas, denying his motion to withdraw his guilty plea and imposing an aggregate 20-year to life sentence on October 25, 2021.  Finding no error, we affirm.

## A. Facts and Procedural Background

{¶ 2} Appellant was originally charged in a 24-count indictment, including one count of rape by force or threat of force, one count of gross sexual imposition by force or threat of force, five counts of rape of a victim under ten years of age, ten counts of gross sexual imposition of a victim under 13 years of age of age, three counts of gross sexual imposition of a victim under 12 years of age with an intent to abuse, and three counts of rape of a victim under 13 years of age. The charges arose from alleged conduct with minor victims over an extended period, between 2007 and 2012.

{¶ 3} On September 9, 2021, appellant withdrew his prior not guilty plea in writing, and entered a plea as to two counts. In a written plea agreement, appellant pled guilty to Count One, rape in violation of R.C. 2907.02(A)(2) (by force or threat of force) and Count Three, rape in violation of R.C. 2907.02(A)(1)(b) (victim less than thirteen years of age), each a felony of the first degree. The state agreed to dismiss all other counts at sentencing. Prior to accepting the plea, the trial court informed appellant he would be classified as a Tier III sex offender and required to register his address every 90 days, for life, in addition to community notification. The trial court then inquired into appellant's understanding, and appellant indicated he was satisfied with his attorney's work and had enough time to talk to his attorney regarding his decision to enter a plea. As to the charges, appellant demonstrated knowledge of the offenses and penalties as follows:

2.

Q. What is it you intend to plead guilty to, what charges?

A. Two F-1s.

Q. Okay. Those are?

A. Rape charges.

Q. Do you understand if you were to have a trial, the State would be required to prove certain things to a jury to show that you are guilty of rape. Do you know what those things are?

A. [No audible response.]

Q. I am not asking you to tell me what they are, but I am asking you: Do you understand in a trial what the State would need to prove to show that you were guilty of rape?

A. Yes, Your Honor.

The trial court then asked appellant's trial counsel regarding appellant's knowledge of the elements for the rape offenses in the following exchange:

THE COURT: [to trial counsel], have you had the opportunity to explain to your client the concept of elements of an offense and what the elements of rape are?

[TRIAL COUNSEL]: We talked about it early on, yes. He may have some questions about it based on his education level, but, again, we did talk about it when I first met with him and went over that very detailed.

3.

THE COURT:     Do you waive any further explanation?

[TRIAL COUNSEL]:     Absolutely do.  I know that we discussed it and I feel that he understands it.

{¶ 4} The trial court addressed the maximum potential prison term for each count with appellant, 10 years as to Count One and life without parole as to Count Three, and addressed the constitutional rights appellant was waiving by entering his plea.  The state recited the facts it would have demonstrated at trial as to each count.  At the conclusion of the colloquy and the state's recitation, the trial court inquired of appellant whether he understood and believed the state's recitation to be accurate.  Appellant responded, "Yes, Your Honor."  The trial court continued the matter for sentencing on October 25, 2021.

{¶ 5} On September 20, 2021, appellant filed a pro se, handwritten motion to withdraw his plea, indicating he did not have a complete understanding of the consequences of his plea.  Appellant's trial counsel filed a motion to withdraw that same day.  The trial court permitted counsel's withdrawal and appointed a new attorney to represent appellant.

{¶ 6} On October 25, 2021, the trial court convened the scheduled hearing, noting, "We were here originally for a hearing on [appellant's] motion to withdraw his plea." Instead of hearing on the motion, however, the trial court addressed a revised agreement between the appellant and the state, stating, "And it's my understanding that the State of

4.

Ohio and you have come to an agreement as to a sentence that you would like the Court to impose, and that agreement is a total of 20 years in prison up to life imprisonment."

{¶ 7} Based on this new agreement, the trial court conducted a new plea colloquy with appellant. Appellant stated he had time to go over the details with his new trial counsel, and was satisfied with his counsel's representation. In going over the two counts to which appellant was entering a guilty plea, the trial court asked trial counsel to "speak with [appellant] about those elements of the offense to make triple sure [appellant understood] what the charges are." After discussion between appellant and his trial counsel off the record, the trial court inquired of appellant as follows:

Q. Okay. Do you understand what those charges of Rape are?

A. Yes.

Q. Okay. As I said, or maybe didn't say, but I will now, the first one carries with it a potential prison term of ten years, and with a maximum possible fine of $20,000. I don't intend to fine you.

The second one carries with it 15 years and up to life without parole.

So, my plan would be to sentence you on the first charge to ten years in prison – I'm sorry – five years in prison; and on the second charge, the 15 to life. And those would run consecutively, meaning end to end, for a total of 20 years to life imprisonment. Do you understand?

A. Yes.

**{¶ 8}** In addition to addressing the new, jointly recommended sentence, the trial court completed a full Crim.R. 11 colloquy, addressing appellant's constitutional and other rights. The trial court asked appellant if he understood he was waiving those rights.

Q. Do you understand that if you wish to enter a guilty plea, you have to give up all of those rights?

A. Yes.

Q. And do you give up all of those rights?

A. As hard as it is, yes.

Q. Pardon me?

A. As hard as it is, yes.

Q. Okay. Well, you filed a motion. We went through this process before, and I asked you a lot of these same questions and made a lot of the same explanations. And afterwards, you asked to withdraw your plea.

Are you certain that you wish to enter guilty pleas today?

A. Yes.

After the state's recitation of the facts that would be proven at trial and the trial court's reiteration of the registration requirements as a Tier III offender, the trial court, again, inquired into appellant's understanding and desire to enter his plea.

6.

Q. All right. I've witnessed your signature there [on the plea form].

So, I've asked you this once before, but you filed a motion to withdraw your guilty plea. Are you certain you wish to enter a guilty plea?

A. Yes.

Based on appellant's response, the trial court withdrew appellant's motion to withdraw the guilty plea on the record, without objection by appellant. The trial court accepted appellant's guilty plea to Counts One and Three and found him guilty, and proceeded to sentencing. The court imposed the jointly recommended sentence, or an aggregate prison term of 20 years to life.

{¶ 9} Appellant filed a timely appeal.

## B.    Assignments of Error

{¶ 10} Appellant challenges the judgment, arguing a single assignment of error:

The Trial Court committed reversible error by accepting guilty pleas of Kyle A. Deselms ("Appellant") which were not made knowingly, intelligently, and voluntarily.

## II.    Analysis

{¶ 11}  "Both the United States and Ohio Constitutions require a knowing, intelligent, and voluntary plea." *State v. Ryan,* 6th Dist. Ottawa Nos. OT-21-027, OT-21-028, 2022-Ohio-1888, ¶ 13, citing *State v. Carrisales*, 6th Dist. Ottawa No.

OT-17-007, 2018-Ohio-520, ¶ 20, citing *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). To ensure the finality of a proper guilty plea, Crim.R. 11(C) provides a framework for informing a defendant of his or her constitutional rights. *State v. Ballard,* 66 Ohio St.2d 473, 479, 423 N.E.2d 115 (1981). "The underlying purpose, from a defendant's perspective, of Crim.R. 11(C) is to convey to the defendant certain information so that he can make a voluntary and intelligent decision whether to plead guilty." *Ballard* at 479-480.

{¶ 12} Crim.R. 11(C)(2) requires a trial court to personally address a defendant, doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for

8.

obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 13} "When a trial court fails to explain the constitutional rights that a defendant waives by pleading guilty or no contest, we presume that the plea was entered into involuntarily, and no showing of prejudice is required." *State v. Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 386, ¶ 14, citing *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31 (additional citation omitted.). The constitutional rights are set forth in Crim.R. 11(C)(2)(c). *Id.* However, where the challenge concerns a failure to fully address other "nonconstitutional" components of the colloquy, a defendant must demonstrate prejudice to invalidate the plea. *Id.,* citing *State v. Veney,* 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17.

{¶ 14} In this case, appellant does not raise any error as to the trial court's explanation of his constitutional rights under Crim.R. 11(C)(2)(c), but instead argues that his plea was not made knowingly, intelligently, or voluntarily based on the requirements of Crim.R. 11(C)(2)(a) and (b). First, appellant argues that he expressed a desire for mercy at the beginning of the trial court's colloquy, and then expressed confusion to the trial court during the plea colloquy, just prior to imposition of sentence. Appellant also contends that the trial court failed to personally address him to explain the elements of

9.

the rape offenses on the record, but, instead, permitted appellant's trial counsel to address the elements with appellant off the record. We address each argument in turn.

## A.    Confusion

{¶ 15} Appellant first argues that the record demonstrated his confusion regarding his plea because he asked for mercy early in the colloquy and later stated, "I'm confused now." However, appellant presents the statements of "mercy" and "confusion" out of context, giving these statements meaning not evident in the record. Based on the entire record, it is clear appellant was not confused about the plea, but understood the terms and entered the guilty plea to each count knowingly, intelligently, and voluntarily.

{¶ 16} After appellant had moved to withdraw his guilty plea, his first attorney withdrew with leave of court, and the trial court appointed a second attorney to represent appellant. After new counsel entered an appearance, the state and trial counsel engaged in further negotiations, resulting in an amended plea agreement. The only change to the plea concerned the sentence. The parties jointly recommended a 20 year to life aggregate sentence.

{¶ 17} Early in the hearing, the trial court indicated its intention to impose a five-year prison term for Count One and a prison term of 15-years to life for Count Three, with the sentences to run consecutively, "meaning end to end," for an aggregate prison sentence of 20 years to life as jointly recommended by the parties. The trial court then explained post-release control, "otherwise known as parole," and cautioned that violating

10.

the terms of post-release control could result in additional prison time "for up to one half of your original prison sentence." Finally, the court explained that committing a new felony offense while on post-release control could result in additional time in prison that would run consecutively to the sentence imposed for the new felony offense. The trial court then inquired regarding appellant's understanding in the following exchange:

Q. Okay. Any questions so far?

A. I mean, the only thing, I would ask for mercy.

Q. You would ask what?

A. For a little bit of mercy, and possibly run them concurrent.

Q. Well, I am told that there is an agreement.

A. Okay.

Q. That it's going to be 20 years to life. And then, once I sentence you, do you understand that I lose control of this case?

A. Okay.

The trial court reiterated the constitutional and other rights that appellant waived by entering his guilty plea. The trial court then specifically asked appellant if he was "certain that you wish to enter guilty pleas today?" Appellant responded, "Yes."

{¶ 18} Toward the end of the plea hearing, the trial court referenced the signed, amended plea form and the following exchange occurred:

THE COURT: Okay. This is the form that the Court has (showing); is that your signature?

THE DEFENDANT: Yes.

THE COURT: And have you entered into that agreement voluntarily and of your own free will?

THE DEFENDANT: I'm confused now.

THE COURT: Well, I'll have you talk with [trial counsel].

[PROSECUTOR]: Your Honor, maybe I note for purposes of the record that everything in this agreement is identical as to today with the only amendment being that the parties have stipulated that the appropriate sentence should be an aggregate term of 20 to life. So, that would be the only change to this document, or only additional promise.

So, this document that was previously signed and executed in open court on September 9 is the exact same thing that we went through today; it's just that the parties have now further agreed to stipulate to an aggregate term of 20 years to life.

THE COURT: That old agreement could have been 25 to life.

THE DEFENDANT: Okay.

THE COURT: But today the agreement is 20 to life. Do you understand that?

THE DEFENDANT: Okay. That's what confused me. Okay. Okay.

THE COURT: So you've entered into that agreement voluntarily?

THE DEFENDANT: Yes

THE COURT: All right, great.

{¶ 19} Taken in context, the request for mercy and the "confusion" voiced by appellant preceded explanations and clarification by the prosecutor and the trial court. Appellant, however, points to the questions while ignoring the clarifications, followed by his own statements indicating, in express terms, that he understood and wished to enter his plea. To challenge the knowing, intelligent, and voluntary nature of the plea, an appellant must show "a prejudicial effect," or that, but for the failure of the trial court to explain and ensure a defendant subjectively understood the implications of the plea and the rights he waived, he would not have entered the plea. (Citations omitted) *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Here, there is no basis to conclude that appellant was prejudiced by a failure to ensure an understanding that appellant affirmatively stated he possessed.

{¶ 20} The record, in this case, demonstrates neither a failure to fully inform appellant nor a "prejudicial effect" based on a failure to inform. Based on the entire record of the hearing, the statements made – in context – demonstrated that the trial court

13.

ensured any issues were clarified with a thorough explanation of the terms of the agreement and complete notice regarding the rights that appellant waived in accepting that agreement. Contrary to appellant's argument on appeal, the record demonstrates initial hesitation followed by clear understanding and willingness to enter a plea. Accordingly, appellant's first argument lacks any factual basis, as demonstrated by the record.

## B. Elements

{¶ 21} In his second argument, appellant contends that the trial court erred because it failed to personally apprise him of the elements of the rape charges, but instead, permitted his trial counsel to provide the explanation off the record. As previously noted, this claim implicates a non-constitutional right, requiring a demonstration of prejudice. (Citation omitted.) *Dangler,* 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, at ¶ 14. We recently addressed and rejected similar argument in *State v. Ryan,* 6th Dist. Ottawa Nos. OT-21-027, OT-21-028, 2022-Ohio-1888.

{¶ 22} In *Ryan,* the appellant argued that his guilty pleas were not knowingly, voluntarily, and intelligently made because the trial court failed to personally address the elements of the offenses or the underlying facts. *Ryan* at ¶ 12. The trial court had directed trial counsel to go through the elements, and we noted "the case law makes clear that the trial court was not obligated to recite the elements or explain the facts supporting each offense in order to render [the] plea 'knowing' or 'voluntary.'" *Ryan* at ¶ 16,

14.

quoting *State v. Duhart,* 6th Dist. Lucas No. L-16-1283, 2017-Ohio-7983, ¶ 10. Instead, the colloquy is proper where the record demonstrates that a defendant received proper information and showed an understanding of the charges, "whether that understanding was obtained 'from the trial court itself, the prosecutor, or some other source.'" *Ryan* at ¶ 22, quoting *State v. Goens,* 12th Dist. Butler No. CA2005-06-174, 2006-Ohio-4324, ¶ 12.

{¶ 23} Here, as in *Ryan,* trial counsel provided an explanation of the elements to appellant, and the state recited the underlying facts regarding the conduct comprising each rape charge. Unlike *Ryan,* appellant received the explanation twice, from both of his attorneys, during both plea hearings, followed by a recitation of facts comprising the offenses. Furthermore, after each explanation, appellant acknowledged that his trial counsel had discussed the elements and the plea with him and that he understood the nature of the charges to which he was entering a plea and wished to enter his plea. In challenging the explanation of the elements on appeal, appellant does not dispute he was informed and, most significantly, he does not raise any argument relative to prejudice.

{¶ 24} Based on this record, the trial court ensured appellant understood the nature of the charges, through consultation with his trial counsel, and there is no requirement of an additional explanation by the trial court "where the record contains a representation by defense counsel that the nature of the offense has been explained to the accused." (Citation omitted.) *State v. Fitzpatrick,* 102 Ohio St.3d 321, 2004-Ohio-3167, 810 N.E.2d 927, ¶ 57. Therefore, considering the lack of factual support for appellant's claims of

15.

confusion, as well as the record demonstrating appellant's understanding of the charges and willingness to enter his plea, we find appellant's sole assignment of error not well-taken.

### III.    Conclusion

**{¶ 25}** Having found substantial justice has been done, we affirm the judgement of the Ottawa County Court of Common Pleas entered October 25, 2021.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Christine E. Mayle, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.