[Cite as *State v. Acosta*, 2023-Ohio-737.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                             Court of Appeals No. WD-22-020

      Appellee                                       Trial Court No.  2021CR0430

v.

Michael Scott Acosta                              **DECISION AND JUDGMENT**

      Appellant                                      Decided:  March 10, 2023

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Chief Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This is an appeal filed by appellant, Michael Acosta, from the March 2, 2022 judgment of the Wood County Court of Common Pleas.  For the reasons that follow, we reverse.

**{¶ 2}** Appellant sets forth two assignments of error:

1. The trial court abused its discretion by imposing two hundred and twenty-one days in the ODRC for a violation of Appellant's post release control.

2. The trial court did not substantially comply with the requirements of Crim.R. 11(C)(2)(a), therefore Appellant's plea was not offered knowingly, intelligently and voluntarily.

## Facts

**{¶ 3}** On August 19, 2021, appellant was indicted on three charges: Count One, felonious assault in violation of R.C. 2903.11(A)(1) and (D)(1)(a), a felony of the second degree; Count Two, abduction in violation of R.C. 2905.02(A)(1) and (C), a felony of the third degree; and Count Three, domestic violence in violation of R.C. 2919.25(A) and (D)(2), a first-degree misdemeanor. At the time of the charges alleged in the indictment, appellant was on postrelease control from a 2017 case.

**{¶ 4}** On December 7, 2021, appellant entered a plea of guilty to: amended Count Two, attempted abduction in violation of R.C. 2905.02(A)(2) and (C) and R.C. 2923.02, a felony of the fourth degree; and Count Three, domestic violence in violation of R.C. 2919.25(A) and (D)(2), a first-degree misdemeanor. During the plea hearing, the trial court referred to the plea form that appellant had signed, and asked appellant if he had read the form and had any questions. Appellant replied he read the form, with his

2.

attorney present, and had no questions. The court also asked appellant if, by placing his initials on the form and signing the form, he is saying he read, understood and agreed with what is in the form; appellant responded in the affirmative.

{¶ 5} At the February 22, 2022 sentencing hearing, the trial court ordered appellant to serve 18 months in prison on amended Count Two and 180 days on Count Three; the 180 days were ordered to be served concurrently to the sentence imposed on amended Count Two. The court then noted appellant was convicted, in 2017, of attempted felonious assault and placed on postrelease control. The court stated that 249 days of postrelease control were remaining, imposed those days,[1] and ordered them to be served consecutively to the sentence imposed on amended Count Two and Count Three. Appellant appealed.

{¶ 6} We will address appellant's assignments of error in reverse order.

**Second Assignment of Error**

{¶ 7} Appellant argues at the time of his plea, the trial court did not orally inform him that the court had the authority to order a judicial sanction, pursuant to R.C. 2929.141, nor did the court orally notify him that it could, in its discretion, terminate his postrelease control and impose an additional consecutive sentence for his postrelease control violation.

---

[1] In its March 2, 2022 judgment entry on sentencing, the trial court set forth appellant was in violation of his postrelease control and imposed 221 days for the violation. Appellant did not address or take issue with the discrepancy in postrelease control time imposed.

3.

**{¶ 8}** Appellant acknowledges the trial court advised him of the following: the maximum penalties for his new felony offense; that upon release from prison, he could be placed on postrelease control; and if he committed a new felony while on postrelease control, he may be sentenced for that felony as well as an additional consecutive term of one year or the amount of time remaining on postrelease control, whichever was greater. Appellant also acknowledges his plea form contained a written notification stating if he was now on postrelease control, a plea could result in revocation proceedings and any new sentence may be imposed consecutively. Nonetheless, appellant asserts the court did not substantially comply with the requirements of Crim.R. 11(C)(2)(a) prior to accepting his plea, thus his plea was not offered knowingly, intelligently and voluntarily.

## Law

**{¶ 9}** Crim.R. 11 requires that guilty pleas be made knowingly, intelligently and voluntarily. "[A]n alleged ambiguity during a Crim. R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea." *State v. Barker*, 129 Ohio St.3d 472, 2011-Ohio-4130, 953 N.E.2d 826, syllabus. While literal compliance with Crim.R. 11 is preferred, the trial court must "substantially comply" with the rule when dealing with non-constitutional elements of Crim.R. 11(C). *State v. Ballard*, 66 Ohio St.2d 473, 475, 423 N.E.2d 115 (1981).

**{¶ 10}** Substantial compliance means, under the totality of the circumstances, the accused subjectively understands the implications of his plea and the rights he is waiving.

4.

*State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). If the trial court substantially complied with Crim.R. 11 with respect to a non-constitutional right, an accused claiming his guilty plea was not knowingly, intelligently and voluntarily made, must show prejudice. *Id.* That test is whether the plea would have otherwise been entered. *Id.*

{¶ 11} If the trial court does not substantially comply with Crim.R. 11 regarding a non-constitutional right, a reviewing court must determine whether the trial court partially complied or failed to comply with the rule. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 32. If there is partial compliance, "e.g., by mentioning mandatory postrelease control without explaining it," the plea may be vacated only if the accused demonstrates prejudice. *Id.* If the trial court completely failed to comply with Crim.R. 11, "e.g., by not informing the defendant of a mandatory period of postrelease control, the plea must be vacated." *Id.* "'A complete failure to comply with the rule does not implicate an analysis of prejudice.'" (Citation omitted.) *Id.*

{¶ 12} Constitutional rights are: (1) a jury trial, (2) confrontation of witnesses against the accused, (3) the compulsory process for obtaining witnesses in the accused's favor, (4) the state must prove the accused's guilt beyond a reasonable doubt at trial, and (5) the accused cannot be compelled to testify. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 19. If the trial court fails to strictly comply with Crim.R. 11 regarding constitutional rights, the plea is invalid. *Id.* at ¶ 31.

5.

**{¶ 13}** Non-constitutional rights, of which an accused must be informed, are: (1) the nature of the charges; (2) the maximum penalty involved, which includes, if applicable, an advisement on post-release control; (3) if applicable, the accused is not eligible for probation or the imposition of community control sanctions; and (4) after entering a guilty plea, the court may proceed directly to judgment and sentencing. Crim.R. 11(C)(2); *Veney* at ¶ 10-13; and *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 19-26, (postrelease control is a non-constitutional right).

**{¶ 14}** R.C. 2929.141 concerns, inter alia, the commission of an offense by a person under postrelease control, and provides in relevant part:

> (A) Upon the conviction of or plea of guilty to a felony by a person on post-release control at the time of the commission of the felony, the court may terminate the term of post-release control, and the court may do either of the following regardless of whether the sentencing court or another court of this state imposed the original prison term for which the person is on post-release control:

> (1) In addition to any prison term for the new felony, impose a prison term for the post-release control violation. The maximum prison term for the violation shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under post-release control for the earlier felony. In all cases, any

prison term imposed for the violation shall be reduced by any prison term that is administratively imposed by the parole board as a post-release control sanction.  A prison term imposed for the violation shall be served consecutively to any prison term imposed for the new felony.  The imposition of a prison term for the post-release control violation shall terminate the period of post-release control for the earlier felony. * * *

{¶ 15} In *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, 124 N.E.3d 766, ¶ 21, the Supreme Court of Ohio held:

Crim.R. 11(C)(2)(a) requires a trial court to advise a criminal defendant on post-release control for a prior felony, during his plea hearing in a new felony case, of the trial court's authority under R.C. 2929.141 to terminate the defendant's existing post-release control and to impose a consecutive prison sentence for the post-release-control violation.

{¶ 16} The Supreme Court further held:

Sentences imposed under R.C. 2929.141(A) cannot stand alone.  The court may impose the sentence only upon a * * * plea of guilty to a new felony, making the sentence for committing a new felony while on postrelease control and that for the new felony itself inextricably intertwined.  By any fair reading of Crim.R. 11(C)(2), the potential R.C.

2929.141(A) sentence was part of the "maximum penalty involved." *Id.* at ¶ 17.

{¶ 17} The Supreme Court found the trial court had told Bishop of the maximum sentence he could receive for his fifth-degree felony conviction, but the trial court had not informed Bishop he was also subject to a separate consecutive 12-month sentence for his postrelease control violation. *Id.* at ¶ 16. The Supreme Court further found "the trial court completely failed to inform Bishop that a consecutive prison sentence under R.C. 2929.141(A) was possible. That is not partial compliance. Bishop need not show prejudice." *Id.* at ¶ 20.

{¶ 18} When reviewing whether a plea was entered in compliance with Crim.R. 11(C), we apply a de novo standard of review. *Nero*, 56 Ohio St.3d at 108-109, 564 N.E.2d 474.

### Plea Hearing

{¶ 19} At appellant's plea hearing, the following colloquy took place, in relevant part:

THE COURT: I have in front of me the plea documents. * * * At the end of the document below the words approved by but above the word defendant is a signature that appears to be of Michael Scott Acosta. Is that your signature?

THE DEFENDANT: It is.

8.

THE COURT: And did you place it there?

THE DEFENDANT: I did.

THE COURT: I also note that throughout the document are the initials M.A. next to each one of the enumerated paragraphs. Are those your initials?

THE DEFENDANT: They are.

THE COURT: Did you place them there?

THE DEFENDANT: I did.

THE COURT: Now, did you place your initials here and did you sign this document after reading the document completely?

THE DEFENDANT: Yes.

THE COURT: Did you read it with your attorney present?

THE DEFENDANT: I did.

THE COURT: Were any questions you had fully and completely answered?

THE DEFENDANT: No questions. Everything was good.

THE COURT: Do you have any questions at this time?

THE DEFENDANT: I do not.

THE COURT: Now, by placing your initials on this document and signing this document are you saying that you've read, understood, and agreed with what is in this document?

9.

THE DEFENDANT: Yes.

* * *

THE COURT: As a felony of the fourth degree, Count Two carries with it the possible maximum penalty * * *. Count Three is domestic violence. It's a misdemeanor of the first degree. It carries with it the possibility of * * *. Do you understand all those maximum penalties?

THE DEFENDANT: I do.

* * *

THE COURT: Now, do you understand that by pleading guilty you are waiving or not exercising or using these specific constitutional rights?

THE DEFENDANT: Yes, I understand.

* * *

THE COURT: Now, I need to advise you of post release control. Now, there is the possibility of a prison term.

* * *

Further, if you commit a new felony while on post release control in addition to being sentenced for the new felony, the Court in sentencing you could add an additional consecutive prison term of one year or what time remains on your post release control term, whichever is greater, as a maximum.

## Plea Form

**{¶ 20}** The plea form appellant signed provides in pertinent part:

F. EFFECT OF PLEA OF GUILTY.

* * *

I understand that if I am now * * * under post release control from prison,

this plea may result in revocation proceedings and any new sentence could

be imposed consecutively.

G. MAXIMUM PENALTY. I understand that the maximum penalty as to

each count is as follows: Offense: Amended Count Two * * *

Offense: Count Three * * *.

H. CONSECUTIVE SENTENCES. I understand that the sentence for two

or more offenses, even if the sentences are not mandatory, may be required

by the Court to be served consecutively.

## Analysis

**{¶ 21}** In our de novo review, we observe at appellant's December 7, 2021 plea hearing, the trial court, in the Crim.R. 11 oral plea colloquy, discussed the maximum penalties relating to amended Count Two and Count Three, the prospective requirements of postrelease control and the consequences of appellant committing a new felony while on postrelease control. The court did not ask appellant if he was presently on postrelease control, nor did the court mention the penalty it could impose for a violation if appellant

was currently on postrelease control. We find, just like in *Bishop*, the trial court told appellant of the maximum sentence he could receive for his new offenses, but did not tell appellant that he was also subject to a separate consecutive sentence of over 200 days for a postrelease control violation.

{¶ 22} We further note that during the plea hearing, the trial court referred to the plea form that appellant had read and signed. The plea form included provision F. ("I understand that if I am now * * * under post release control from prison, this plea may result in revocation proceedings and any new sentence could be imposed consecutively."). The court did not draw appellant's attention to the provision, discuss the provision, or inform appellant what amount of time "any new sentence" could be. In addition, provision G. in the plea form set forth the maximum penalty, which did not include "any new sentence" for a postrelease control violation. Thus, we find the plea form did not clarify the ambiguities created during the Crim.R. 11 oral plea colloquy.

{¶ 23} Given the record, we find the trial court failed to comply with Crim.R. 11, as the court did not advise appellant at his plea hearing that the potential R.C. 2929.141(A) sentence was part of the "maximum penalty involved." We therefore find appellant was not required to show that he was prejudiced by the court's failure. Consequently, we find appellant's guilty plea was not knowingly, intelligently and voluntarily made. Accordingly, appellant's second assignment of error is well-taken.

12.

{¶ 24} In light of our ruling, appellant's first of assignment of error is rendered moot.

## Conclusion

{¶ 25} The judgment of the Wood County Court of Common Pleas is hereby reversed, and this matter is remanded for proceedings consistent with this opinion. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                              _____
                                                         JUDGE

Myron C. Duhart, P.J.
CONCUR.                                     _____
                                                            JUDGE

Gene A. Zmuda, J.                              _____
CONCURS AND WRITES                            JUDGE
SEPARATELY.

**ZMUDA, J., concurring,**

{¶ 26} I agree with the majority's disposition of appellant's second assignment of error and consequent reversal of the trial court's judgment under the authority of the Ohio Supreme Court's plurality decision in *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-

13.

5132, 124 N.E.3d 766.  I write separately to recognize the realization of the potential difficulties for sentencing courts brought about by the *Bishop* decision.  Those difficulties were foreseen by Justice Fischer, who wrote in his dissent in *Bishop*:

> As a result of the new requirement proposed in the lead opinion, if a trial court failed to inform a defendant of a potential and speculative judicial sanction, the defendant's guilty plea would not be valid.  The lead opinion does not include an explanation of what would happen when the court is not aware of the defendant's existing postrelease control. In many cases, the judicial sanction will not be imposed by the judge that sentenced the defendant to postrelease control in that defendant's prior felony case; indeed, the prior felony conviction may not even have been entered in the same jurisdiction. * * *

> Moreover, as noted above, pursuant to R.C. 2929.141(A)(1), the trial court may "impose a prison term for the post-release control violation" that "shall be the greater of twelve months or the period of post-release control for the earlier felony minus any time the person has spent under the post-release control for the earlier felony."  Thus, to comply with the requirement proposed in the lead opinion, the trial court would need to inform the defendant of the maximum penalty involved, but the trial court would have to know not only that the defendant was serving a period of

14.

postrelease control but also know the details of the underlying felony conviction and of the defendant's existing postrelease-control term.

This would place an unreasonable burden on the trial court to be aware of every defendant's existing postrelease control. The trial court is often not made aware of the defendant's existing postrelease control and prior felony convictions until after the plea hearing through a presentence-investigation report. *See* R.C. 2951.03; Crim.R. 32.2. Would trial courts now be required to do their own investigation prior to a guilty plea? Would prosecuting attorneys now be required to provide the trial court with the defendant's rap sheet prior to the plea? Or would it be the defendant's burden to provide such information, as the defendant is likely the only individual to know whether or not he or she is on postrelease control? If it would be the defendant's burden to inform the trial court, then any error by the trial court would have been invited by the defendant. And what would happen if a defendant pleaded guilty at arraignment? Would trial courts be required to delay such a plea in order to conduct such an investigation?

*Id.* at ¶ 86-88 (Fischer, J., dissenting).[2]

---

[2] Notably, the trial court in this case imposed the 249 days that remained of appellant's postrelease control-related sentence, rather than imposing the greater one-year sentence the statute requires and the state requested at sentencing. However, this issue is not before this court as the state has not filed a cross-appeal.

15.

**{¶ 27}** The difficulty identified by Justice Fischer above is apparent in this case. Here, the record demonstrates that the trial court became aware of appellant's postrelease control status *after* it accepted appellant's plea and ordered a presentence investigation report. One may quibble that the trial court ought to have inquired into appellant's postrelease control status at the plea hearing, but even when a trial court is diligent to do so, inaccurate information can lead to a reversal in favor of the defendant, even if such information comes directly from the defendant or defense counsel. *See State v. Crook*, 7th Dist. Mahoning No. 21 MA 0051, 2022-Ohio-896 (vacating defendant's plea because trial court did not inform defendant of potential postrelease control violation sentence even though the trial court inquired as to the defendant's postrelease control status and was told, by the defendant and his defense counsel, that the defendant had already completed his postrelease control sanction).

**{¶ 28}** Justice Fischer foresaw an additional negative implication of the *Bishop* decision:

> Further, the practical reality of the position taken by the lead opinion is that it might allow for the potential abuse of our plea system. When a defendant, who is likely in the best position to inform the trial court that he or she is serving a period of postrelease control, fails to provide that information to the trial court, the court will not provide notice of "the maximum penalty involved." Moreover, if the defendant waives a

16.

presentence-investigation report, *see* R.C. 2951.03(A)(1), then that court might not revoke the defendant's postrelease control at sentencing at all. The practical implication of this court adopting the lead opinion's conclusion would be that the defendant then could successfully argue that his plea was not knowingly, intelligently, and voluntarily made simply based on an error that the defendant had invited. And the defendant would not be required to show prejudice because "the trial court completely failed to inform [the defendant] that a consecutive prison sentence under R.C. 2929.141(A) was possible," lead opinion at ¶ 20, even though the lengthier sentence was not realistically possible because the trial court could not impose the lengthier sentence without having the information that the defendant withheld from the trial court. In that scenario, a defendant who had suffered no prejudice would get another bite at the apple simply because that defendant failed to provide to the trial court information related to the defendant's existing postrelease control.

The conclusion of the lead opinion would likely place an unreasonable burden on the trial court and might provide defendants who are on postrelease control with the opportunity to abuse the plea system.

*Id.* at ¶ 89-90 (Fischer, J., dissenting).

17.

**{¶ 29}** Appellant and his counsel (and, to be fair, the state) were silent as to appellant's postrelease control status during the plea hearing in this case. There is no way to ascertain from the record whether such silence was the product of an intentional strategy to "poison the well" with reversible error in the event appellant was unsatisfied with his sentence. Thus, I cannot say that appellant has seized on "the opportunity to abuse the plea system" in this case. *Id.* at ¶ 90 (Fischer, J., dissenting). However, I find the potential for such abuse palpable in this case and in others like it.

**{¶ 30}** Notwithstanding the foregoing problems foreseen by Justice Fischer and made possible by the Ohio Supreme Court's decision in *Bishop*, I recognize that "[a]s an intermediate court, we are not free to overrule a decision of the Ohio Supreme Court. * * * Instead, we are bound to follow the decision." *State v. Whitman*, 2021-Ohio-4510, 182 N.E.3d 506, ¶ 28 (6th Dist.), citing *State v. Thrasher*, 6th Dist. Wood No. WD-06-047, 2007-Ohio-2838, ¶ 7. Therefore, with these concerns in mind, I concur with the majority's conclusion that appellant's plea was not knowingly, intelligently, and voluntarily entered under the authority of the Ohio Supreme Court's decision in *Bishop*.

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.