**[Cite as *State v. Hills*, 2026-Ohio-959.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

    Appellee

v.

Emmanuel B. Hills

    Appellant

Court of Appeals No. L-25-00037

Trial Court No. CR0202402329

**<u>DECISION AND JUDGMENT</u>**

Decided: March 20, 2026

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Patricia Horner, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} Defendant-appellant, Emmanuel Hills, appeals the February 11, 2025 judgment of the Lucas County Court of Common Pleas, sentencing him to an indefinite term of four to six years in prison after he pled guilty to felonious assault in violation of R.C. 2903.11(A)(1) and (D), a felony of the second degree; failure to stop after an accident, in violation of R.C. 4549.02(A)(1), (A)(2), (B)(1) and (B)(2)(b), a felony of the fourth degree; and domestic violence, in violation of R.C. 2919.25(A), (D)(1) and (D)(2),

a misdemeanor of the first degree.  For the following reasons, we affirm the trial court judgment.

## I.  Background

{¶ 2} According to the record, Hills was arrested after hitting his wife with his car and leaving the scene of the accident.  Following the arrest, on September 12, 2024, Hills was indicted on two counts of felonious assault, two counts of failure to stop after an accident, a count of domestic violence, and a count of vandalism.  He was arraigned shortly after and pled not guilty to all charges.

{¶ 3} On January 6, 2025, Hills pled guilty to one count of felonious assault, one count of failure to stop after an accident, and one count of domestic violence.  In exchange, the three remaining counts were dismissed, and the prosecution recommended a sentence cap of four years.

{¶ 4} A sentencing hearing was held on February 3, 2025.  At that time, the trial court imposed a sentence of four to six years in prison for the felonious assault, 18 months for the failure to stop after an accident, and 180 days for the domestic violence conviction.  The sentences were ordered to be served concurrently for a total indefinite sentence of four-to-six-years.[1]

---

[1] Hills also had a community control violation pending in Lucas County in CR 23-1282. In that case, Hills pled to attempted having a weapon while under disability, a violation of R.C. 2923.03 and 2923.13(A)(3) and (B), and a felony of the fourth degree.  After his plea and sentencing in this case, Hills' community control was revoked in CR 23-1282, and he was sentenced to 18 months prison time.  The court ordered that the 18 months be served concurrently with the sentence imposed in this case—the indefinite four to six years.  Hills did not appeal CR 23-1282.

2.

**{¶ 5}** Following his sentencing hearing, Hills appealed to this court. He presents one assignment of error for our review:

DEFENDANT'S PLEA WAS NOT ENTERED INTO KNOWINGLY

## II. Law and Analysis

**{¶ 6}** Hills argues that he was not fully informed of the "real and potential consequences" of entering a plea, and as a result, he did not enter his plea knowingly or intelligently.

### A. Crim.R. 11 Standard and the Plea Process

**{¶ 7}** "When reviewing whether a plea was entered in compliance with Crim.R. 11(C), we apply a de novo standard of review." *State v. Acosta*, 2023-Ohio-737, ¶ 18 (6th Dist.), citing *State v. Nero*, 56 Ohio St.3d 106, 108-109 (1990).

**{¶ 8}** "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 2020-Ohio-2765, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, (1992); *State v. Clark*, 2008-Ohio-3748, ¶ 25; and *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.*, citing *Engle* at 527.

**{¶ 9}** Crim.R. 11 outlines the procedures that trial courts must follow when accepting pleas to provide "'an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Id*. at ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). Crim.R. 11(C)(2) requires that the sentencing

3.

judge must personally address the defendant at the plea hearing and inform the defendant of all of the consequences of entering a plea. Crim.R. 11(C)(2)(a); *State v. Montgomery*, 2016–Ohio–5487, ¶ 41. Crim.R. 11(C)(2) states that:

> In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶ 10} When reviewing compliance with Crim.R. 11, our focus is not on whether the trial court recited the exact language of Crim.R. 11, but "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences" of the plea. *Dangler* at ¶ 12; *State v. Veney*, 2008-Ohio-5200, ¶ 15-16.

{¶ 11} Generally, to show that a plea was not knowingly, voluntarily, or intelligently made, a criminal defendant must establish that an error occurred *and* that it was prejudicial. *See Dangler* at ¶ 13, citing *State v. Perry*, 2004-Ohio-297, ¶ 14-15. The test for prejudice is "whether the plea would have otherwise been made." *Id.* at ¶ 16.

4.

{¶ 12} The Supreme Court of Ohio has carved out two limited exceptions to the prejudice component of that rule in the criminal-plea context: (1) a trial court's complete failure to comply with a portion of Crim.R. 11(C), *State v. Sarkozy*, 2008-Ohio-509, ¶ 22; and (2) a trial court's failure to explain the constitutional rights that a defendant waives by pleading guilty or no contest, *Clark*, 2008-Ohio-3748, at ¶ 31. The Supreme Court has identified those constitutional rights as the ones set forth in Crim.R. 11(C)(2)(c): the right to a jury trial, the right to confront one's accusers, the privilege against self-incrimination, the right to compulsory process to obtain witnesses, and the right to require the state to prove guilt beyond a reasonable doubt. *Dangler* at ¶ 14, citing *Veney* at ¶ 19.

{¶ 13} Where either exception occurs, courts are to presume that the plea was entered involuntarily and unknowingly, and no showing of prejudice is required. *Id*. at ¶ 14-15.

### B. The Plea Hearing

{¶ 14} Before accepting Hills' plea, the court first confirmed general information about him—his education level and ability to read and write in English; that he was a United States citizen; that he was not under the influence of any medication, drug, or alcohol that would interfere with his understanding of the events in court; that he did not suffer from any mental illness or disease; that he was clearheaded; and that no one had threatened him or promised him anything to get him to enter into his plea other than the promises in the plea agreement. Additionally, the court confirmed that Hills understood

5.

that it was not bound by the recommendations made by his attorney and the State regarding his sentencing. Hills confirmed that he understood each statement.

{¶ 15} Hills then told the court that he was on community control in case number CR 23-1282, that he had no other pending charges, and that he was under supervision in Wood County and Upper Sandusky. The court explained that his guilty plea could potentially affect his standing with the other courts. Hills confirmed that he still wanted to enter a guilty plea.

{¶ 16} The court next asked Hills if he had time to consult with his attorney about the case, whether his attorney had answered any questions he had and gone over any evidence with him, and whether he was satisfied with his attorney's advice and representation. Hills answered yes to each question.

{¶ 17} The court went over the maximum possible penalties involved with each charge and informed Hills of the nature and effect of his plea. It then explained that by making the plea, Hills would be admitting to complete guilt; and that he was waiving his rights to a jury trial, to require the state to prove his guilt beyond a reasonable doubt at a trial, to confront witnesses against him, and to have compulsory process for obtaining witnesses in his favor. The court explained that if Hills went to trial, he could not be compelled to testify against himself and that his silence could not be used against him to try and prove his guilt. It then stated that by entering a plea, Hills would be limiting his rights to appeal. Hills responded that he understood each statement.

{¶ 18} The court asked if Hills had any questions. He answered that he did not. The court then confirmed that Hills' signature was on the plea form, that he was entering

6.

his guilty plea voluntarily, and that he wanted to resolve the charges at the plea hearing. Hills responded yes to each.

{¶ 19} Following this exchange, the court accepted Hills' plea and scheduled a hearing for sentencing.

{¶ 20} In his only assignment of error, Hills now focuses on four matters that he believes the trial court failed to address during the plea hearing—1) the potential time each felony carried; 2) whether the prison time he was facing was mandatory; 3) what the full impact of his plea would be on his community control; and 4) whether the charges he pled to carried presumptions of prison time.  Hills believes that he was prevented from fully understanding and appreciating the potential consequences of his plea, and as such, he did not knowingly and intelligently plead guilty.  We will address each allegation in order.

### i.  Maximum Potential Sentences

{¶ 21} Hills first argues that the trial court did not explain the amount of potential time each charge carried.  He contends that the court should have told him that "a felony of the Second degree has a presumption of prison time of between 2 to 8 years and a 4th degree felony had a presumption of community control but if prison was imposed it could be between 6 months and 18 months, at monthly increments.  There was a misdemeanor domestic violence conviction, which carried a maximum of 180 days; the time for this penalty would operate concurrently with the felony penalty time."

7.

**{¶ 22}** Looking to the transcript of the plea hearing, Hills' allegation that the trial court failed to inform him of the possible sentences is immediately contradicted by the lengthy conversation between the trial court and Hills at the hearing:

The Court: Count 2 is a felony of the second degree. It subjects you to indefinite sentencing, but the Court will have to determine a max—a minimum term and *the maximum minimum term would be eight years* for that charge. Do you understand that?

Hills: Yes.

The Court: On Count 3 *the maximum penalty phase is 18 months in prison* and a $5,000 fine. Do you understand that?

Hills: Yes.

The Court: And in Count 5, *the maximum penalty is 180 days in jail* and a thousand dollar fine.

Hills: Yes.

\* \* \*

The Court: Now, because you're subject to indefinite sentencing as it relates to Count 2, means that you face both the minimum term and a maximum indefinite term. Your minimum term is selected from the range associated with that offense. So in this case, *two to eight years*. Do you understand that?

Hills: Yes.

The Court: Then your maximum indefinite term is calculated by taking one-half of whatever the minimum term is that's imposed and that's added to it, becoming your maximum term. Do you understand that?

Hills: Yes.

The Court: So in this scenario, if I were to impose two years as the minimum term, what would your indefinite term be?

Hills: Indefinite should be two years—a year, right.

The Court: So one year would be added to it. So it would be two to three years. Now, likewise if I were to impose 8 years as your minimum term on Count 2, to get to your maximum indefinite

8.

term would take one half of that is 4, so it would be 8 to 12. Do you understand that?

Hills:        Yes. [(Emphasis added.)]

{¶ 23} The trial court conveyed exactly the same information that Hills contends was missing from his plea hearing. As such, the court adequately informed Hills of the potential maximum sentences he faced.

### ii. Mandatory Prison Time

{¶ 24} Hills next argues that the trial court did not explain whether his prison time would be mandatory

{¶ 25} "Under Crim.R. 11(C)(2)(a), the trial court must make sure that, before a defendant pleads guilty to a felony, he or she understands (1) the nature of the charges; (2) the maximum penalty involved, and, *if applicable*; (3) that the defendant is *not* eligible for community control sanctions, *i.e., prison is mandatory*." (Emphasis added.) *State v. Wyatt*, 2017-Ohio-8319, ¶ 8 (8th Dist.). "[T]he rule makes clear that the trial court must orally advise a defendant of his or her *ineligibility* for community control. There is no converse requirement that the trial court advise the defendant that he or she is *eligible* for community control." *State v. Drzayich*, 2016-Ohio-1398, ¶ 22 (6th Dist.), citing *State v. Floyd,* 1993 WL 415287, *6 (4th Dist. Oct. 13, 1993).

{¶ 26} Hills was not subject to mandatory prison time. This is confirmed by his written plea agreement: "I understand the **MAXIMUM** penalties **COULD** be: a maximum **indefinite** prison term of a minimum of **9.5 years** and a maximum of **13.5 years** of which **0** is mandatory, during which I am NOT eligible for judicial release or community control…." Accordingly, Crim.R. 11(C)(2)(a) did not apply, and the trial

9.

court did not err by not mentioning whether his maximum sentence included mandatory prison time.

### iii. Community Control in CR 2023-1282

{¶ 27} Hills' third argument is that the trial court did not fully explain whether his plea would impact his community control in case number CR 2023-1282.

{¶ 28} As a reminder, in CR 23-1282, Hills pled to attempted having a weapon while under disability and was under community control when the incident in this case occurred. Because of his charges in this case, Hills received a community control violation charge in CR 23-1282. After his plea and sentencing in this case, Hills' community control was revoked in CR 23-1282, and he was sentenced to 18 months prison time for the violation of community control. The court ordered that the 18 months be served concurrently with the sentence imposed in this case.

{¶ 29} A review of case law reveals that "Ohio appellate courts have almost always held that a trial court need not warn a defendant of the potential for consecutive sentences prior to accepting a guilty plea to multiple offenses. The only time courts deviate from this rule is when the imposition of consecutive sentences is mandatory…." *State v. Whitman*, 2021-Ohio-4510, ¶ 22 (6th Dist.). For example, in *State v. Davis*, 2025-Ohio-1188 (8th Dist.), a similar argument was made regarding the impact of a plea on community control. In that case, Davis argued that the trial court erred by not informing him that he could incur an additional penalty as a community control violator—and, therefore, did not inform him of the "the maximum penalty involved" under Crim. R. 11(C)(2)(a). *Id.* at ¶ 12.

10.

{¶ 30} The court disagreed, noting that the phrase "maximum penalty" in Crim.R. 11(C)(2)(a) refers to the charges for which Davis was entering a plea. *Id.* at ¶ 13. Thus, "the trial court was only required to inform Davis of the maximum penalty associated with the charges to which he was entering guilty pleas to comply with Crim.R. 11(C)(2)(a); the trial court was not required to inform Davis that his guilty plea would trigger a potential consecutive sentence on his community-control violation." *Id. See also State v. Ellis*, 2020-Ohio-1130, ¶ 12 (5th Dist.); *State v. Nelson*, 2020-Ohio-6993, ¶ 47-51 (8th Dist.).

{¶ 31} Similarly here, the trial court was not required to inform Hills that his guilty plea could trigger a potential new sentence on a community control violation. Thus, the trial court would not have erred if it had failed to reference the impact Hills' plea might have on his community control in CR 2023-1282.

{¶ 32} That being said, the trial court *did* acknowledge that Hills was on community control in CR 2023-1282, and ensured that Hills understood that "each court operates independently," and "by entering a guilty plea here it could potentially affect [his] standing in those other courts."

{¶ 33} Accordingly, Hills' argument is entirely meritless.

### iv. Presumption of Prison Time

{¶ 34} Hills' final allegation is that the trial court failed to inform him about the presumptions each count carried—that felonious assault had a presumption of prison time and that failure to stop after an accident had a presumption of community control.

11.

{¶ 35} As previously mentioned above, to comply with Crim.R. 11, a trial court is only required to inform a defendant of the *maximum* possible penalty for an offense. "There is no provision requiring the court to determine that the defendant has an understanding of the statutory presumption in favor of incarceration…." *State v. Raymond*, 2013-Ohio-3144, ¶ 9 (8th Dist.); *see also State v. Stevenson*, 2018-Ohio-2645, ¶ 2 (8th Dist.); *State v. Gales*, 1998 WL 698363, *3 (2d Dist. Oct. 9, 1998) ("It is one thing to advise a defendant who has tendered a guilty plea that the defendant either is, or is not, eligible for probation or, under the new sentencing statute, for a community control sanction. It is quite another to advise a defendant of the statutory presumption in favor of incarceration, and then to ascertain that the defendant understands that presumption.").

{¶ 36} As we have already discussed, the trial court clearly informed Hills of the maximum penalties carried by each charge and received confirmation from Hills that he understood. The court was not required to discuss presumptions and did not err by not doing so.

### III. Conclusion

{¶ 37} In sum, although Hills claims that his plea was not knowingly or intelligently made because the trial court failed to inform him of potential consequences of his sentence, our review of the record establishes that the trial court complied with the constitutional and procedural safeguards in Crim.R. 11 to ensure that his plea was knowingly and intelligently entered. As such, we find Hills' only assignment of error not well-taken.

12.

**{¶ 38}** Accordingly, we affirm the February 11, 2025 judgment of the Lucas County Court of Common Pleas.  Hills is ordered to pay any costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J. _____

_____
JUDGE

Christine E. Mayle, J. _____

Myron C. Duhart, J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.